STATE *ex rel.* VEAL *v.* MAYOR AND ALDERMEN OF DYERSBURG.

(*Jackson,* April Term, 1946.)

Opinion filed June 1, 1946.

(1)

2

Milburn N. Cooper, of Dyersburg, for appellant (relator below).

M. Watkins Ewell, of Dyersburg, for appellee.

Mr. Special Justice Pride Tomlinson delivered the opinion of the Court.*

In 1941 the Board of Mayor and Aldermen of Dyersburg adopted a resolution limiting to five the number of retail intoxicating liquor stores which might be maintained within its boundaries. In March of 1945, this board passed an ordinance to the same effect. The number of such liquor stores permitted never exceeded five since the enactment of Chapter 49 of the Acts of 1939 permitting the sale of intoxicating liquor under the terms and provisions of said general law. On November 1, 1945

---

*Sitting for Chief Justice Grafton Green.

relator, appellant here, applied to this board for the issuance of a certificate of good moral character. There were five such liquor stores being maintained in Dyersburg at the time. The purpose of the certificate was to enable appellant to procure from the state commissioner of finance and taxation a permit and retailer's license to sell intoxicating liquor in Dyersburg. The Mayor and Board of Aldermen refused to grant the certificate. This refusal was not based on the moral turpitude of appellant, but because the granting of the certificate would have made it legally possible to maintain more than five liquor stores in Dyersburg in violation of its ordinance.

Thereupon appellant, as relator, filed his petition seeking a writ of *mandamus* to require these town officials to issue him this certificate. This appeal is the result of the dismissal of his petition in the court below.

The officials of a municipality have the right to refuse to grant a certificate of good moral character, notwithstanding the absence of moral turpitude, if the issuance of such certificate would make it legally possible to violate a legally authorized ordinance regulating the sale of intoxicating liquor within the boundaries of the municipality. *State ex rel. Major* v. *Cummings*, 178 Tenn. 378, 158 S. W. (2d) 713, 139 A. L. R. 837.

However, it is insisted by the appellant that the board was not authorized by its charter to enact the ordinance referred to. The charter of Dyersburg is Chapter 410 of the Private Acts of 1903. That charter empowers the Board to enact ordinances for the following among other purposes:

"8. To make regulations to secure the general health of the inhabitants and prevent and remove nuisances."

"14. To license, tax and regulate merchants, peddlers and all privileges taxable by the State."

"21. To provide for and regulate the inspection, weighing, measuring and vending of all kinds of fuel, provender or feed, provisions, oils, whiskies and other spirits, milk, butter, lard and all kinds of provisions, meats, poultry, fish and vegetables." Section 16.

It is specifically insisted by appellant that these provisions of the charter do not authorize the board to enact an ordinance limiting the number of retail liquor stores which may be maintained in Dyersburg. Our case of *State ex rel.* v. *Bass,* 177 Tenn. 609, 616, 152 S. W. (2d) 236, 238, makes this statement: "The general rule is well settled that the number of saloons in a municipality, or in a particular portion thereof, may be validly limited by statute, or ordinance, when the power to enact such ordinance is conferred. Annotation, Ann Cas. 1913E, 365."

Possibly this statement of the Court was not necessary to the decision of the question being considered in that case, since the exact question before the Court was with reference to the legality of a zoning ordinance. However that may be, the statement is in accord with the general rule as expressed in the North Dakota Case (*Thielen* v. *Kostelecky,* 69 N. D. 410, 287 N. W. 513, 124 A. L. R. 820) quoted from in our *State ex rel.* v. *Bass, supra,* 177 Tenn. at page 615, 152 S. W. (2d) at page 238, as follows: "The power 'to regulate the retail sale of alcohol and alcoholic beverages,' which the legislative act conferred upon the governing body of a city, vests such governing body with power to fix, by ordinance, a reasonable limit on the number of retail liquor licenses to be issued, and thus limit the number of retail stores that may be operated in the city at any one time."

This Court has repeatedly recognized the authority of municipalities in the exercise of their general police powers to adopt stringent regulations governing the retail

sale of intoxicating beverages within its borders. It was stated in *State ex rel.* v. *Bass, supra,* 177 Tenn. at page 617, 152 S. W. (2d) at page 239, that the business of selling intoxicating liquors by retail "is a business attended with danger to the community, it may, as already said, be entirely prohibited, or be permitted under such conditions as will limit to the utmost its evils. The manner and extent of regulation rest in the discretion of the governing authority." In the case of *Howard* v. *Christmas,* 180 Tenn. 519, 524, 176 S. W. (2d) 821, 823, this Court said that "running through these cases is emphatic recognition of the broadest powers of regulation of the sale of intoxicating beverages, including beer, in Municipalities." In the case of *McCanless* v. *State ex rel. Hamm,* 181 Tenn. 308, 314, 181 S. W. (2d) 154, 156, 153 A. L. R. 832, this Court said: "It is everywhere now accepted that the business of dealing in intoxicating liquors is subject to the most stringent regulation as to places where it is conducted, persons who shall conduct it, and as to whether it shall be conducted at all."

It is the opinion of this Court that the above quoted provisions of the charter of Dyersburg clearly authorized the passage of the ordinance limiting the number of retail intoxicating liquor stores in that town.

We find no merit in the insistence that such ordinance violates the constitution either of the State or of the Federal Government. A complete and very apt answer to that insistence is contained in the Illinois case of *People ex rel. Fitzgerald* v. *Harrison,* 1912, 256 Ill. 102, 99 N. E. 903, 905, Ann. Cas. 1913E, 362, wherein the court said: "The city council having determined that the interests of the municipality will be subserved by limiting the number of saloons within its boundaries, its discretion cannot be controlled by the court, even if the latter

should not agree with the conclusion. No one's constitutional right is impaired, and, if the limitation prevents some persons from keeping dramshops who might do so under an unlimited ordinance, that result is merely an incidental effect, which does not affect the validity of the limitation imposed with a view to the public welfare in the reasonable exercise of the police power of the state. Everybody has an equal right to apply for a license, and when the number authorized by the ordinance has been granted everybody is equally excluded from the business." 124 A. L. R., p. 830.

When the resolution of 1941 limiting to five the number of such stores in Dyersburg was passed that town had a population of 10,000. When the Board refused in November of 1945 to issue appellant a certificate of good moral character the population of Dyersburg was approximately 12,500 and the number of liquor stores was still limited to five. It is, therefore, insisted by appellant that because of this increase in population the board was not authorized in continuing the limitation of five. We do not think that this point is well taken. In this matter "the power to exercise a sound discretion is implicit in the power to regulate. . . . The manner and extent of regulation rest in the discretion of the governing authority." *State ex rel.* v. *Bass,* 177 Tenn. 609, 617, 152 S. W. (2d) 236, 239. It is our opinion that a refusal to increase the number of stores permitted to be operated in this town (which would be the result of issuing the certificate) because the population has increased from 10,000 to 12,500 is not an abuse of the discretion vested in these officials. Unless officials vested with a discretion have clearly acted arbitrarily and without regard to their duty, the Court will never substitute its judgment for that of the officials with reference to an act calling for

the exercise of a discretion. The action of the board in the instant case has none of the elements of that which is arbitrary. It has been expressly held by this Court that the action of these officials upon such application calls for the exercise of a discretion. *State ex rel. Park* v. *Beasley,* 182 Tenn. 523, 188 S. W. (2d) 333. Keeping in mind that appellant seeks a *mandamus* as to an act, the exercise of which, or its refusal, calls for a discretion upon the part of these officials, it is appropriate here to observe that this Court has expressly held that " 'nothing is better settled with respect to the law governing *mandamus* than that the writ is never granted to control or coerce the exercise of discretionary power on the part of a board or officer.' " *State ex rel. Park* v. *Beasley, supra,* 182 Tenn. at pages 527, 528, 188 S. W. (2d) at page 335.

In further support of his insistance that the ordinance in question is invalid, the appellant contends that any authority which Dyersburg may have had under its charter granted in 1903 to regulate the sale of intoxicating liquor "was superseded and done away with by the Public Act of 1909 and Section 11208 of the Code".

The act referred to (being Ch. 1, Pub. Acts, 1909) is carried in Section 11208 of the Code. By that section the sale of intoxicating liquor anywhere in Tennessee is made unlawful. The reasoning of appellant is that this general law "declaring the state's policy supersedes all special charter rights of city to license or otherwise control the same." There is no conflict between this general law of 1909 forbidding the sale of intoxicating liquors and the charter provisions granting Dyersburg broad police powers. The law forbidding the sale of such liquors did not take away, or intend to take away from Dyersburg the power granted by its charter to enact such ordinances not in conflict with the general law as were reasonably

necessary for the protection of the health and morals and safety of its inhabitants and for the prevention of disturbances, breaches of peace and kindred acts within its borders. The prohibition of the sale of intoxicating liquor did not revoke these police powers granted by the charter which are in noways inconsistent with these provisions of the charter. The charter of the city of Chattanooga was created by a Private Act of 1869 as amended by a Private Act of 1911. It authorized the city to regulate retailers of liquors and to pass all ordinances "not contrary to the constitution and laws of the State that may be necessary to carry out the full intent and meaning of this charter." It was held in our case of *State ex rel.* v. *Bass, supra* that this charter provision authorized Chattanooga to enact a zoning ordinance regulating the location of liquor stores made legal by Chapter 49 of the Acts of 1939. The 1909 Act carried in Section 11208 of the Code was in force until the enactment of the 1939 Act, and so were the above referred to provisions of the charter. This Court in the *Bass case* did not deem Section 11208 of the Code to have superseded this police power granted by the charter to Chattanooga. So in this case, we cannot agree with the insistence of appellant that the police power charter provisions granted to Dyersburg by its charter to regulate the sale of liquor "was superseded and done away with" by Section 11208 of the Code. We hold to the contrary of this insistence.

The final insistence made in behalf of appellant is based on the fact that he had been lawfully engaged in the operation of a retail liquor store in Dyersburg from July of 1939 until he was inducted into the United States Army on December 28, 1942, and while in the United States Army his license was renewed for the year 1943

but was not renewed for the year 1944, being issued that year to some one else. He was discharged from the army on October 7, 1945. Based upon the fact that appellant was in the armed services of his country, it is contended that when he made application for a certificate of good moral character after being discharged from the army in the fall of 1945 it was the duty of the officials to issue the certificate in order that appellant might operate a retail liquor store "as he did before and at the time of his induction into the military service," and that it was the duty of the officials within the premises to suspend or extend the ordinance limiting the number of operators to five so as to place this appellant in the status which he occupied when he entered the armed services.

Assuming—but expressly not so holding—that the officials of Dyersburg had the authority to "suspend" the ordinance in order that the appellant might procure a license, yet it is still a fact that this was a matter which addressed itself solely to the discretion of these officials and, as heretofore pointed out, the law governing mandamus is that the writ is never granted to control or coerce the exercise of discretionary power on the part of a board or officer.

The decree of the court below is affirmed. Costs of the appeal are adjudged against appellant and the surety on his appeal bond.