RICHARD W. BARNES, Appellee,

*v.*

WILLIAM B. INGRAM, JR., Appellant.

397 S.W.2d 821.

(*Jackson,* April Term, 1965.)

Opinion filed December 9, 1965.

Petition for Rehearing Denied January 14, 1966.

W. Otis France, Memphis, for appellee.

Patrick Johnson, Sr., City Attorney, Arthur J. Shea, and S. A. Wilburn, Assistant City Attorneys, Memphis, for appellant.

Mr. Justice White delivered the opinion of the Court.

This case involves an appeal by William B. Ingram, Jr., individually and as Mayor of the City of Memphis, from the action of the chancellor in sustaining a bill for injunctive relief filed against him and others by Richard W. Barnes, the appellee.

On December 3, 1963, the Acting Mayor of the City of Memphis appointed Mr. Barnes, an employee of the Personnel Department of the City, to be the Personnel Director to fill the vacancy in that office. Said appointment was approved unanimously by the Board of Commissioners. This appointment was made pursuant to Ordinance No. 24, sec. 290.8, which created the Office of Director of Personnel,

> * * * who shall be the head of such division, shall be appointed by the mayor with the approval of the board of commissioners, shall serve at the will and pleasure of the mayor and board of commissioners, * * *.

The Personnel Division is a part of the Department of Administration and Health of the City.

The appellant, William B. Ingram, Jr., is the duly elected Mayor of the City of Memphis and took office on

January 1, 1964, to serve during the ensuing four years. On February 18, 1964, Mayor Ingram wrote a letter to Barnes suspending him from his position as Personnel Director without setting forth his reasons therefor. Under date of February 19, 1964, Barnes replied to the letter of suspension requesting specifications of reasons for such suspension, and a hearing before the Commissioners of the City of Memphis.

Such specifications were not furnished but under date of March 31, 1964, Barnes appeared before said Commissioners to answer, under oath, certain charges contained in the Mayor's letter of February 25, 1964, addressed to the Board of Commissioners, but this letter, or a copy thereof, was not furnished to Barnes on the date written.

At the conclusion of the hearing the Board, by a vote of four to one, reinstated the complainant as Director of Personnel of the City of Memphis, the dissenting vote being that of the Mayor, at which time the Mayor stated to the other Commissioners:

All right, the motion to reinstate Mr. Barnes carried by four to one, and I hereby inform you gentlemen that the Mayor suspends Mr. Barnes from February 18, 1964, [the date of the original suspension] and the reasons for such suspension will be submitted to you gentlemen at the proper time.

In response to such statement Commissioner Lane said: "I can say this, the man has done no wrong." Commissioner Moore then stated: "Mr. Mayor you have to have a reason for suspending people * * * and in my opinion that man hasn't done a thing and in my mind he is—honorable * * *."

By Charter provision, sec. 181, the Mayor has the power to suspend any city officer for misconduct or dereliction in office, reporting such action and his reasons therefor, in writing, to the next regular meeting of the Board of Commissioners.

A hearing on the second suspension was concluded on September 1, 1964, at which time the Board of Commissioners, by vote of four to one, the Mayor dissenting, held that the suspension was without merit and again reinstated Barnes as of February 18, 1964, with full pay. Immediately thereafter, Mayor Ingram again suspended Barnes effective February 18, 1964, the original date of suspension.

It is alleged in the bill filed by the appellee Barnes that the Mayor has violated his rights in depriving him of the emoluments, rights and privileges of the office to which he was lawfully appointed. He averred that unless the Mayor be enjoined that he would continue in his efforts to force him to leave his office, all without good reason or just cause. He further averred that he had not performed his duties since the date of the first suspension on February 18, 1964, and that he had been without compensation during the intervening months because of the refusal of the City to pay his salary.

All of the Commissioners, except the Mayor, filed a joint demurrer in which they prayed the judgment of the court on the ground that the complainant was not entitled to any relief against them, and did not specifically pray for any such relief.

The defendant, William B. Ingram, Jr., individually and as Mayor of the City of Memphis, filed a demurrer containing the exact language as contained in the de-

murrer filed collectively by his co-defendants. There-after, the Mayor filed an additional demurrer setting forth some ten grounds.

Application for a temporary injunction was heard by the chancellor and in a detailed memorandum he set forth his reasons for granting the relief sought.

In this memorandum he referred to sec. 290.8 (Ordinance No. 24), which provides that the Director of Personnel shall serve at the will and pleasure of the Mayor and Board of Commissioners. The memorandum refers to sec. 185 of the codified Charter of the City of Memphis, which provides that all of the city officers whose removal from office is not otherwise provided for in this Act, shall be subject to removal by the Board of Commissioners of the City of Memphis, sitting as a court, upon written charges preferred by the Mayor or any member of the Board of Commissioners, etc.

From our reading of the Charter of the City of Memphis, together with the pertinent ordinances, we are convinced that the Mayor has the power to suspend any city officer for misconduct or dereliction in office, reporting such actions with his reasons therefor, in writing, to the next regular meeting of the Board of Commissioners.

Said sec. 185 applies to all "the city officers whose removal from office is not otherwise provided for in this Act * * *."

Ample provision is made by Ordinance No. 24, sec. 290.8, for the removal of the Director of Personnel, and in this ordinance it is specifically provided, as hereinabove indicated, that such Director of Personnel "shall

serve at the will and pleasure of the Mayor and Board of Commissioners.''

■ The courts ordinarily are loath to interfere with the authority of a mayor to suspend an employee of the city, but under the facts in this case it appears that the Mayor's determination to dispense with the services of Barnes is quite firm. He suspended him in the first instance without charges, and in the second instance with slight charges, and, as indicated above, at least two of these suspensions were made despite the unanimous decision of the Board of Commissioners, save and except his vote, that his charges were without foundation.

The order of the court reinstating Mr. Barnes to his former position and enjoining the Mayor from further acts of suspension would not seem to interfere with the Mayor in the discharge of his duties as the Chief Executive Officer of the City of Memphis because he has the immediate right to discharge such Director with the concurrence of the Board of Commissioners, and this may be accomplished with or without just ground because the Director is serving at the will and pleasure of the Mayor and Board of Commissioners.

In 43 Am.Jur., Public Officers sec. 242, the following rule is set forth:

The power to suspend is generally considered as included in the power of removal for cause, since a suspension is merely a less severe disciplinary measure. But where the power to remove at will or at pleasure exists, it has been observed that the power to suspend is not necessary and does not exist. Moreover, the indefinite suspension of a public officer without pay

is not considered as within the general power of removal.

We agree with the observation made by the chancellor, viz.:

If the Mayor desires to remove or discharge a city officer or employee, serving at the will and pleasure of the City Commission, it appears that his remedy is a recommendation or request to the City Commission that such an officer or employee so serving be dismissed or removed and favorable action on such recommendation or request by the City Commission as a body.

Section 37 of the City Charter gives to the Mayor the duty to have "general supervision of all the officers of the City and see that the ordinances and provisions of the Charter are observed."

■ The general appointive power of the Mayor does not give him the power to remove subordinates from office without the concurrence of the Board of Commissioners. The contention of the Mayor is that each suspension of Barnes was based on a new cause which had not appeared to him at the time of the previous suspension. All of this alleged misconduct, however, occurred prior to February 18, 1964, the date of the first suspension. Whether the Mayor may continue to suspend Barnes *ad infinitum,* alleging newly discovered acts of misconduct, or whether equity can enjoin him from doing so is the real question on this appeal.

It appeared to the chancellor, and it appears to us, that the Mayor is trying to do indirectly what the Charter and ordinances do not directly empower him to do. That is, he is trying to use his power to suspend to effect what amounts to a removal of Barnes, for all practical pur-

poses, from office, or at least to harass and embarrass him into resigning.

■■ It is clear to us that equity will enjoin a municipal officer from doing irreparable harm to someone by doing some act "not authorized by the Constitution or the laws of this State." Gibson, Suits in Chancery sec. 861 (5th ed. 1956). This rule would apply, it would seem, therefore, to acts unauthorized by city charters or ordinances.

■ It is equally clear that equity cannot intervene to restrain an officer vested with discretionary power from doing a discretionary act, even if it is irreparably harmful to someone, unless the officer is acting arbitrarily, fraudulently, or corruptly. In *Reams v. Board of Mayor and Aldermen of McMinnville,* 153 Tenn. 408, 284 S.W. 382 (1925), a case involving the discretionary placing of a certain school building location, it is said:

> The decisions are uniform to the effect that the courts cannot, and will not, review the discretion of the city authorities in such matters, and it is equally well settled that they will interfere by injunction only where it clearly appears that the authorities are acting corruptly or fraudulently. 153 Tenn. at 412, 284 S.W. at 383.

In a case involving the discretionary power in a city board to issue a retail liquor license, *State ex rel. Veal v. Mayor and Aldermen of Dyersburg,* 184 Tenn. 1, 195 S.W.2d 11 (1946), it was stated:

> Unless officials vested with a discretion have clearly acted arbitrarily and without regard to their duty, the Court will never substitute its judgment for that of the officials with reference to an act calling for the

exercise of a discretion. 184 Tenn. at 7-8, 195 S.W.2d at 13.

 17 McQuillin, Municipal Corporations sec. 49.56 (1950) provides that equity has jurisdiction to restrain municipal officers from removing employees until the validity of such action may be determined by virtue of charter and ordinance provisions. However, before such authority is exercised it should be made clearly to appear that the officers are abusing the discretion reposed in them and will likely continue to do so to the irreparable injury of the complaining party, or that such officers are acting unfairly and no adequate remedy at law is available to him.

The permanent injunction granted by the chancellor in this cause does not unreasonably interfere with the right of the Mayor to discharge Barnes with dispatch, provided, of course, his effort to do so meets with the approval of a majority of the Board of Commissioners.

From our examination of the Charter of the City of Memphis, we find in sec. 43 of Article III, on page 44, of the Memphis Municipal Code, Volume 1, that:

The board of commissioners shall hold a regular meeting every Tuesday at 2:30 o'clock in the afternoon, and may hold such special meetings as may be called by the mayor or any two of the other commissioners.

See also Chapter 298 of the Private Acts of 1909.

Therefore, the Mayor has ample and adequate authority to have an early hearing on any charges that he may care to prefer against this Director of Personnel, remembering that such Director is appointed by the Mayor with the approval of the remaining Commissioners, to

serve at their will and pleasure. If a majority of the Commissioners decide at any regular meeting, or special meeting called for that purpose, to dispense with the services of Mr. Barnes, they are given full authority to do so by the same ordinance through which Mr. Barnes was originally appointed and elected.

■ In the splendid briefs filed on behalf of Mayor Ingram and the City of Memphis, our attention is directed to the clear provisions of the law that ordinances of a city are subordinate to the charter provisions. This was pointed out in the case of *Marshall & Bruce Co. v. City of Nashville,* 109 Tenn. 495, 512, 71 S.W. 815, 819 (1902):

> The provisions of the charter are mandatory, and must be obeyed by the city and its agents; and, if in conflict with an ordinance, the charter must prevail. 109 Tenn. at 512, 71 S.W. at 819.

There are other cases and textbooks to the same effect, but, as we have said, the question of supremacy of charter over ordinance is not involved in the case *sub judice.*

■ Upon consideration of the bill, the demurrers, the answer filed by Mayor Ingram, and the stipulation of the parties, we are fully satisfied that the chancellor rendered the proper decision. Therefore, his action is affirmed.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.