**STATE of Tennessee, on Relation of John H. LEWIS, Plaintiff/Appellee,**

**v.**

**Sanny L. BOWMAN, Mayor; City of Rockwood, et al., Defendants/Appellants.**

Court of Appeals of Tennessee, Western Section, at Knoxville.

Feb. 20, 1991.

Application for Permission to Appeal Denied by Supreme Court June 24, 1991.

John C. Duffy, Watson, Reeves and Beeler, Knoxville, for defendants/appellants.

J. Anthony Farmer, Ray, Farmer & Eldridge, Knoxville, for plaintiff/appellee.

TOMLIN, Presiding Judge (Western Section).

John H. Lewis ("plaintiff" or "Lewis") filed suit in the Chancery Court of Roane County against the City of Rockwood and its Mayor and City Council ("City" or "Council") for wrongful discharge. Plaintiff alleged wrongful separation from his position as Superintendent of Public Works by a vote of the Council and sought damages and reinstatement to his position with City.

Following a bench trial, the chancellor held that Lewis' termination was carried out in violation of the procedures set forth in the City Personnel Ordinance and was thus illegal. He ordered Lewis reinstated to his former position and gave him a judgment against City in the amount of $49,-536.20.

By this appeal City raises the following issues: Did the trial court err in: (1) holding as a matter of law that City's Personnel Ordinance did not conflict with provisions of City's Charter; (2) ordering mandamus relief of reinstatement with back pay; (3) failing to rule that plaintiff had not exhausted all available administrative remedies; (4) considering evidence outside the record; and (5) not holding that plaintiff failed to take reasonable steps to mitigate damages. Our disposition of the first issue is dispositive of this case. We therefore pretermit the remaining issues. For the reasons stated, we reverse and dismiss.

Few if any of the facts are in dispute. Lewis was hired by the Mayor to fill the position of Superintendent of Public Works. After serving a probationary period, he was confirmed as a full-time employee in October, 1986 by a vote of Council. On July 20, 1987, the new Council, having been elected three weeks previous, decided by a majority vote to terminate Lewis' employment. While the matter of his employment was an item on the agenda for the meeting, no formal notice of the impending action was given to Lewis by the Mayor or the Council prior to the meeting. His termination became effective July 31, 1987. The minutes do not reflect any reason for his dismissal.

While Lewis had heard unofficially of the impending action, his first real "notice" of termination came over the radio the following morning. Later that day he received a phone call from the Mayor advising him of his dismissal. Lewis remained on the job during the ensuing ten-day period. He perfected no appeal seeking reconsideration of its action to the Council during that time. A formal Separation Notice signed by the City Recorder stating that he had been terminated by the Council was given to Lewis on July 31, 1987.

During the following seventeen months, Lewis placed his name with the unemployment service and also submitted an application for employment with one company. He drew unemployment benefits as allowed by law. His search for employment was temporarily deterred by heart surgery in January, 1988.

This suit was filed in January, 1989. Lewis sought a writ of mandamus, calling upon the court to order the Council to reinstate him to his former position and at the same time to compensate him for back-pay and benefits beginning with the date of discharge. As grounds, he alleged in essence that the Council had acted illegally and in such a manner as to deprive him of his procedural due process rights under the City Personnel Ordinance, which was in effect both at the time Lewis was hired and when he was fired.

Prior to the hearing below, the chancellor granted partial summary judgment in favor of plaintiff. He ruled that there was no conflict between the Rockwood City Charter and the City Personnel Ordinance, stating "that the ordinance simply states the terms and conditions upon which the City Council will exercise its authority under the terms of the charter."

In 1980, by legislative action—Chapter 289 of Tennessee Private Acts—City acquired a comprehensive new charter relative to the organization and operation of its government. Section 1 of Article VI, entitled *Administrative Organization,* reads in pertinent part as follows:

The Council shall by ordinance provide the administrative organization of the City not provided for in this charter. In addition to the offices provided by this charter, the Council may create such offices and positions of employment as deemed necessary for the efficient operation of the city, and shall fix the compensation for offices and positions created. All offices and positions of employment at the level of department head or above shall be filled by the Council upon recommendation of the Mayor and all such officers and employees shall serve at the will of the Council.

Subsequently, the Council enacted a comprehensive personnel ordinance. Its purpose is found in § 1–701, which reads as follows:

*General purpose.* It is the purpose of this article to establish a fair and uniform system of personnel administration for all employees of the City of Rockwood in order that the most effective services possible may be delivered to the citizens of the community in keeping with the social and economic needs of the citizens. It shall therefore be the policy that:

(a) Employment shall be based on merit and fitness, without regard to race, religion, national origin, political affiliations, sex, or age.

(b) Just and equitable incentives and conditions of employment shall be established and maintained.

(c) Tenure of employees covered by this ordinance shall be subject to good behavior, satisfactory work, necessity for the performance of work, and availability of funds. (As replaced by ord. No. 797).

In the "Definitions" section, 1–702, the "Chief Administrative Officer" is identified as the Mayor; the "governing body" is identified as the City Council; and a "department" is defined as "the primary organizational unit which is under the immediate charge of a department head who reports directly to the chief administrative office[r]...." Section 1–703 provides in part that the coverage of the Ordinance extends to the "classified service," which includes "all other full-time positions, including department heads."

The procedure for termination and the handling of grievances is found in Section 1–721(f), which reads in pertinent part as follows:

(f) *Dismissal.* The chief administrative officer or his delegated representative, after discussion with the supervisor and under the direction of the governing body, may dismiss or demote any employee for the good of the city service....

The employee shall be furnished an advanced written notice containing the nature of the proposed action, the reasons therefore [sic (therefor)] and his right to answer the charges in writing. This notice shall be furnished at least one (1) calender [sic] week prior to the proposed effective date of the action after receiving notice, but prior to the date of transmittal the employee may be retained in duty status, on leave, or suspended with or without pay at the discretion of the chief administrative officer or his delegated representative. If the employee fails to respond to the advance notice, the proposed action of the chief administrative officer or his delegated representative shall be effective on the date specified with no need for further action. Otherwise, the chief administrative officer or his delegated representative shall carefully consider the appeal of the employee before making a final deci-

sion. If the employee wishes to appeal the decision of the chief administrative officer or his delegated representative he shall so transmit in writing his appeal to the city council. (As added by ord. No. 797)

At trial below the court limited proof to the issue of whether or not City complied with the dismissal procedures set forth in the ordinance. Shortly after the hearing, the chancellor filed his memorandum opinion, which reads as follows:

This is another sad chapter in the continuing political turmoil that has plagued Rockwood City Government for years. In this case, the plaintiff, who was the former superintendent of public works, contends that he was summarily terminated by the Rockwood City Council in violation of the protections afforded to him and other employees by the City Personnel Ordinance. The Court agrees. The City Council voted on July 20, 1987 to terminate Mr. Lewis without having given him notice of any act or omission which would justify his termination and without providing him with a hearing or any of the other protections contained in the personnel ordinance.

The City Council is in the curious position of contending that it's [sic] own personnel ordinance is invalid by being in conflict with the City Charter. The City Charter provides that employees of department head level shall serve at the will of the City Council and it is undisputed that Mr. Lewis was a department head. However, the personnel ordinance which sets out a procedure for terminating employees for cause does not conflict with the City Charter. The Council could, and did, adopt an ordinance setting out the terms and conditions upon which it would exercise its authority to terminate a department head. The City Council adopted the Personnel Ordinance but now wants to avoid the effect of that ordinance by saying that it conflicts with the charter.

The City also maintains that Mr. Lewis did not follow the grievance procedure contained in the personnel ordinance. However, the grievance procedure provides a ten-day period in which the aggrieved employee can appeal the mayor's decision to the City Council. In this case, the City Council bypassed the mayor entirely and voted on July 20, 1987 to terminate Mr. Lewis. The Court does not feel that the City Council can take a final vote on his termination and then expect him to appeal that decision to the same body which had already terminated him.

The Court orders that Mr. Lewis be restored to his former position of employment with the City of Rockwood and awards him judgment against the City in the amount of $49,536.20. Costs are taxed to the defendants for which execution may issue.

## I. THE CHARTER AND THE ORDINANCE—IN CONFLICT OR IN FURTHERANCE THEREOF?

In granting partial summary judgment for plaintiff, the chancellor held that the provisions of the City Charter and the Personnel Ordinance were not in conflict with one another. In so holding, the court stated: "The Court further finds that the ordinance simply states the terms and conditions upon which the city council will exercise its authority in personnel matters under the terms of the charter."

The issue before us is: "Does it"?

A side-by-side comparative analysis brings the issue more into focus. Article VI, § 1 of the Charter states that personnel at the level of department head or above are employed by the Council upon the recommendation of the Mayor, and those employees serve at the will of the Council.

On the other hand, the Personnel Ordinance adopted by the City Council in 1983 lists those officials and persons considered to be in "the exempt service" and then states: "The classified service shall include all other full-time positions, including department heads...." It further provides that the Mayor may dismiss or demote any employee for the good of the City service. It states that the employee being dismissed will be given at least one calendar week's

written notice containing the nature of the action to be taken and the reasons therefor, and the employee is to have the right to respond to the charges in writing. Any response to a notice by the recipient is to be made prior to the effective date of the action to be taken. Should he fail to respond, the action of the Mayor is final. Should the employee respond as noted, the Mayor should consider the response of the employee before making his final decision.

Thereafter, the employee is given the right to appeal the decision of the Mayor, in writing, to the City Council within ten days after the Mayor's disposition of the matter. The ordinance states that the Council "shall have final authority on the matter."

█ It has long been the law in this state, as in many other states, that ordinances of a city are subordinate to the charter provisions. This was pointed out in the case of *Marshall & Bruce Co. v. City of Nashville*, 109 Tenn. 495, 512, 71 S.W. 815, 819 (1903), wherein it was stated: "The provisions of the charter are mandatory, and must be obeyed by the city and its agents; and, if in conflict with an ordinance, the charter must prevail." *See also Barnes v. Ingram*, 217 Tenn. 363, 397 S.W.2d 821 (1965).

In the more recent case of *Wilgus v. The City of Murfreesboro*, 532 S.W.2d 50 (Tenn.App.1975), the Chancery Court for Rutherford County declared a zoning ordinance of the City of Murfreesboro as violative of the city charter and thus void. Article III, § 5 of the charter of the City of Murfreesboro provided with respect to zoning ordinances that "[n]otice of the adoption of such amendment, supplement or change in the ordinance shall be given by publishing such notice three (3) times in some daily or weekly newspaper of general circulation in the city." *Id.* at 52. Appellants admitted that only one notice of the zoning ordinance in question was published by the City. However, the zoning laws under which the City operated for many years required only one notice of a proposed ordinance by publication in a newspaper of general circulation.

The chancellor found the ordinance void because it was not published three times before its enactment. The Middle Section of this Court held that the plaintiffs did not have standing to raise the impropriety of the notice, inasmuch as the proof showed that they had actual notice of the proposed ordinance and attended the City Council meetings to make known their opposition to the rezoning.

While *Wilgus* was decided on the question of notice, the Court observed that "[i]t is an elementary principle that ordinances of a city are subordinate to charter provisions." *Id. citing Barnes v. Ingram*, 217 Tenn. 363, 397 S.W.2d 821 (1965). Regarding the matter of compliance with a city charter, the Court made this observation in a footnote which we find pertinent to the case under consideration:

T.C.A. § 13–703 provides for one publication of proposed zoning ordinances. The Murfreesboro Charter is not in conflict with the statute, which provides only a *minimum* notice requirement that the municipalities in their discretion may make more stringent. The City of Murfreesboro has asked for the guidance of the Court on the question of how many publications of its zoning ordinances are necessary for a legal enactment. A charter requirement prescribing a method to be pursued by a municipal legislative body in adopting ordinances is mandatory, and an attempted exercise that is not in compliance with such requirements is void. *Rutherford v. Nashville*, 168 Tenn. 499, 79 S.W.2d 581 (1935). A pattern of noncompliance, no matter how long established, does not vitiate a charter requirement. The only escape from its burden is repeal in the manner prescribed by the charter; mere fiat by the city can never suffice.

532 S.W.2d at 52 n. 1.

In dealing with the nature and operation of Ordinances, *McQuillin Municipal Corporations*, § 15.19, "Conformity to charter," reads as follows:

The charter of the city is the organic law of the corporation, being to it what the constitution is to the state, and the

charter bears the same general relation to the ordinances of the city that the constitution of the state bears to the statutes. Neither the municipal legislative body nor the mayor may disregard charter mandates or procedures at any time, nor do past variations and looseness, be they occasional or frequent, lend an aura of respectability or legality to any other mode of practice.

The proposition is self-evident, therefore, that an ordinance must conform to, be subordinate to, not conflict with, and not exceed the charter, and can no more change or limit the effect of the charter than a legislative act can modify or supersede a provision of the constitution of the state. Ordinances must not only conform with the express terms of the charter, but they must not conflict in any degree with its object or with the purposes for which the local corporation is organized. Consequently, an ordinance violative of or not in compliance with the city charter is void.

*McQuillin*, § 15.19, at 98–99 (3d ed. 1989).

■ It might be argued that under the ruling of the chancellor below the Council retained its right to assert its will by virtue of the fact that it sat as an appellate body, and upon review of the Mayor's actions it would have the privilege of reversing his decision. We perceive this to be only a conditional right, however, for under the ordinance, the Council would acquire this privilege only upon the timely perfection of an appeal by the discharged employee. If no appeal were taken, or if the appeal were not timely filed, the Council would have no say, and the department head would have been terminated at the will of the Mayor alone. Good or bad, the clear meaning of the language in the Charter states that department heads serve at the unrestricted will of the Council.

We conclude that the Personnel Ordinance is in direct conflict with the terms of the Charter. The Charter must prevail and must be followed. The termination of plaintiff was carried out in accordance with the charter. As commendable as the various procedures in the Personnel Ordinance may be, if the Charter is to reflect the policy of the City as expressed by its Council, the solution here is the same as the solution suggested by the *Wilgus* Court in its footnote—amend the Charter to bring it into conformance with the Personnel Ordinance.

Accordingly, the decree of the chancellor is reversed, and plaintiff's suit is dismissed. Costs in this cause on appeal are taxed to plaintiff, for which execution may issue if necessary.

CRAWFORD and HIGHERS, JJ., concur.