IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
SEPTEMBER 23, 2004 Session

CITY OF MEMPHIS, A Municipal Corporation v. THE CIVIL SERVICE
COMMISSION OF THE CITY OF MEMPHIS and TOMMY MOORE

Direct Appeal from the Chancery Court for Shelby County
No. CH-03-0120-3     D. J. Alissandratos, Chancellor

---

No. W2003-02799-COA-R3-CV - Filed December 29, 2004

---

This case involves the demotion of an Air Crash Chief employed by the City of Memphis Fire Department following the revocation of his security clearance and driving privileges by the Memphis-Shelby County Airport Authority. Following his demotion, the Chief appealed the city's decision to the City of Memphis Civil Service Commission. The civil service commission reversed the city's ruling and held that the Chief must be reinstated. The city filed a common law writ of certiorari in the Chancery Court of Shelby County to appeal the finding of the civil service commission. The chancery court reversed, finding that the civil service commission exceeded its authority in reversing the city's decision and reinstating the Chief. We affirm.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Joseph Michael Cook, Memphis, TN, for Appellant, Tommy Moore

Sara L. Hall, Gerald L. Thornton, and Barbaralette G. Davis, City Attorneys, Memphis, TN, for Appellee, City of Memphis

**OPINION**

**Factual Background and Procedural History**

Chief Tommy Lee Moore ("Chief Moore") began his career with the Memphis Fire Department approximately twenty years ago as a private and gradually worked his way to the position of Battalion Chief. In 1999, Chief Moore passed a test required for promotion to the position of Air Crash Chief. In 2001, an Air Crash Chief position became available at Memphis Fire Department Station 33 located at Memphis International Airport ("Memphis Airport"), and Chief Moore was promoted to fill the vacancy. Prior to assuming the new position, Chief Moore applied for and received a security identification badge and airport driver's license from the Memphis-Shelby County Airport Authority ("Airport Authority").[1] On February 5, 2001, Chief Moore reported for his first day of duty at the Memphis Airport as the new Air Crash Chief for Station 33.

Marsalis A. Freeman ("Mr. Freeman") worked for the Memphis Fire Department at Station 33 as a pumper driver tasked with the responsibility of driving Chief Moore in the command vehicle. On Chief Moore's first day at the Memphis Airport, Mr. Freeman took Chief Moore for a ride in the command vehicle to familiarize him with the airport. During their trip, Mr. Freeman drove the command vehicle onto a runway without authorization from the Air Traffic Control Tower. The Airport Authority labeled the event a runway incursion. Mr. Freeman was subsequently disciplined for the incident, but no disciplinary action was taken against Chief Moore at that time.

On July 3, 2002, Mr. Freeman was driving Chief Moore in the command vehicle while responding to an incident at the Memphis Airport. The Air Traffic Control Tower cleared them to cross a runway, but Mr. Freeman drove the vehicle down the runway instead.[2] Following this latest incident, Chief John Looney ("Chief Looney"), a Division Chief with the Memphis Fire Department and the Memphis Fire Department's liaison to the Airport Authority, met with members of the Airport Authority. Chief Looney also launched an investigation into the incident on behalf of the Memphis Fire Department. At the request of the Airport Authority, the Memphis Fire Department returned Chief Moore to his previous position as Battalion Chief away from the Memphis Airport.[3]

---

[1] The Airport Authority requires all personnel working at the airport to obtain the proper security clearance. Any personnel required to traverse the Air Operations Area must also obtain an airfield driver's license by passing a written test and a practical road test.

[2] The Federal Aviation Administration ("FAA") investigated this incident and determined that it did not amount to a runway incursion. (Exhibit 6). The FAA issued a letter to the Airport Authority setting forth this finding, but the FAA also addressed in the letter its concerns about prior runway incursions by the Memphis Fire Department at the Memphis Airport, including the February 5, 2001, incident.

[3] Walter White, Director of Operations and Public Safety with the Airport Authority, sent a letter dated July 19, 2002, to Chester Anderson, Director of the Memphis Fire Department, thanking him for reassigning Chief Moore from the airport.

On July 29, 2002, Walter White ("Director White"), Director of Operations and Public Safety with the Airport Authority, sent a letter to Chief Moore informing him of the Airport Authority's decision to revoke his security clearance and driving privileges at the Memphis Airport. As grounds for this decision, the letter cited Chief Moore's involvement in the July 3, 2002, runway incursion.[4] In the interim, Chief Looney concluded his investigation and determined that, since Chief Moore had his credentials revoked by the Airport Authority, the Memphis Fire Department could no longer keep him in the position of Air Crash Chief at the Memphis Airport.

On August 13, 2002, the City of Memphis ("City") sent Chief Moore a Notification of Administrative Investigation and Hearing alerting him that disciplinary proceedings had been instituted against him. The notice cited the two alleged incursions at the Memphis Airport involving Chief Moore, as well as violations of the Division of Fire Services Operations Manual[5] and the City of Memphis Personnel Manual.[6] On August 20, 2002, the Memphis Fire Department conducted an administrative hearing regarding the allegations lodged against Chief Moore. Chief Looney, in addition to being the investigating officer, also conducted the disciplinary hearing. On August 22, 2002, Chief Looney, on behalf of the City, entered a decision finding, in relevant part, as follows:

> As a result of these incidents, the Memphis Shelby County Airport Authority has asked that you be removed from any position at the airport. Furthermore, they have permanently revoked your Security Identification Display Area badge which is a requirement for you to work actively on the airfield. Both you and Driver Freeman's badges have been permanently revoked.
>
> . . . .
>
> As an active Air Rescue Chief you are responsible for two serious runway incidents. Your actions have been negligent in your duties as an Air Rescue Chief and violated the highest safety standards set by this Department and the Airport Authority.

---

[4] The letter also cited Chief Moore's involvement in a second runway incursion occurring on July 12, 2001. Chief Moore denies any knowledge of the second incursion contained in the letter, and the record reflects that the only other incursion involving Chief Moore occurred on February 5, 2001.

[5] These violations, in summary, included the following: neglect of duty or negligence; failure to maintain required certifications; failure to properly control subordinates and equipment; failure to follow safety procedures and control the driver; an act or omission contrary to good order, discipline, or accepted social practice; and failure to work cooperatively toward serving the best interest of the public.

[6] These violations, in summary, included the following: incompetency; inefficiency; not being professional in work performance; violation of safety rules; operation of a city owned vehicle in wanton disregard for the safety of others; and willfully or repeatedly violating a safety rule.

> Therefore, because of your actions, and because of your violation of the above stated rules and regulations, you are hereby removed from the Airport Air Rescue responsibility and demoted to the rank of Battalion Chief.

Chief Moore appealed the decision to the City of Memphis Civil Service Commission ("Commission"). The Commission held a hearing on December 6, 2002, and heard testimony from several witnesses concerning the allegations. The Commission issued a ruling on January 13, 2003, stating:

> The Commission finds against the City in that there was no reasonable basis for the demotion. The Commission understands that the City has a limited number of positions at the A/R Chief level, and all of those positions involve working at the Airport. The Commission also understands that it was the Airport Authority which took action to confiscate the badge and prohibit Chief Moore from working at the Airport, not the City. However, the evidence presented in this case indicated that the City's liaison did nothing to ensure that Chief Moore received due process in accordance with the guidelines and procedures of the Airport Authority.
>
> . . . .
>
> In summary, the Commission unanimously finds by a preponderance of the evidence that Chief Moore's reassignment amounted to a demotion and the City lacks a reasonable basis for their actions. Therefore, Chief Moore is to be reinstated to his previous rank of Air Rescue Chief with all back pay and benefits as of the date of his demotion.

The City appealed the Commission's ruling by filing a Petition for Writ of Certiorari and Supersedeas in the Chancery Court of Shelby County. The chancellor issued the writ and, after hearing arguments from both parties and reviewing the record from the Commission, issued an order on October 30, 2003, finding that the Commission exceeded its authority as a matter of law when it reinstated Chief Moore. In reaching this conclusion, the chancellor made the following findings: (1) the Airport Authority did not follow its own rules and regulations when it stripped Chief Moore of his security clearance and driving privileges; (2) the City has no control over the decision by the Airport Authority to revoke such credentials; (3) as a result of losing these credentials, Chief Moore could no longer be employed by the Memphis Fire Department at the Memphis Airport; and (4) the Commission exceeded its authority by requiring the City to maintain an employee in a non-existent position, thereby forcing the City to create a new position.

Chief Moore timely filed an appeal to this Court presenting the following issues for our review:

I.     Whether the chancery court erred in reversing the ruling of the City of Memphis Civil Service Commission; and
II.    Whether Appellant is entitled to attorney's fees and costs on appeal pursuant to section 4-5-325 of the Tennessee Code.

For the reasons set forth herein, we affirm the decision of the chancery court.

## Standard of Review

The City couched its appeal to the chancery court in terms of a common law writ of certiorari. Review of the decision by a board or commission, "where not otherwise specifically provided," may be instituted under the procedures set forth in section 27-9-101 *et seq.* of the Tennessee Code. TENN. CODE ANN. § 27-9-101 (2003). Prior to 1989, section 27-9-114 of the Tennessee Code provided that the common law writ of certiorari was the proper vehicle for appealing the decisions of a civil service board.[7] *Huddleston v. City of Murfreesboro*, 635 S.W.2d 694, 695 (Tenn. 1982); *see also Paris v. City of Lebanon Pers. Review Bd.*, No. 01A01-9702-CH-00054, 1997 Tenn. App. LEXIS 677, at *13 (Tenn. Ct. App. Oct. 3, 1997). In 1988, the legislature amended section 27-9-114 of the Tennessee Code to provide that judicial review of the decisions of a civil service commission must be conducted as follows:

> **Proceedings involving certain public employees**.
>
> . . . .
>
> (b)(1) Judicial review of decisions by civil service boards of a county or municipality which affects the employment status of a county or city civil service employee shall be in conformity with the judicial review standards under the Uniform Administrative Procedures Act [("UAPA")], § 4-5-322.
> (2) Petitions for judicial review of decisions by a city or county civil service board affecting the employment status of a civil service

---

[7] The pre-1989 version of section 27-9-114 provided:
> No court of record of this state shall entertain any proceeding involving the civil service status of a county or a municipal employee when such proceeding in the nature of an appeal from from a ruling of city or county official or board which affects the employment status of a county or city employee, except such proceeding be one of *common law certiorari*. Any such proceeding shall be heard by a judge or chancellor without the intervention of a jury. This section shall supersede any displaced provisions of city charters to the contrary.

TENN. CODE ANN. § 27-914 (1984) (emphasis added).

> employee shall be filed in the chancery court of the county wherein the local civil service board is located.

TENN. CODE ANN. § 27-9-114(b) (2003); *see also* 1988 TENN. PUB. ACTS Ch. 1001. While the City's petition was incorrectly labeled, the City correctly noted in its petition that the chancery court must apply the standard of review found in the present version of section 27-9-114 of the Tennessee Code.[8]

The appropriate standard of review to be used by the chancery court when reviewing the decision of a civil service board is that found in section 4-5-322, which provides:

> (h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
> > (1) In violation of constitutional or statutory provisions;
> > (2) In excess of the statutory authority of the agency;
> > (3) Made upon unlawful procedure;
> > (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> > (5) Unsupported by evidence which is both substantial and material in the light of the entire record. In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

---

[8] It was incorrect for the City to suggest in its brief to this Court that the proper method of reviewing the decision of the Civil Service Commission was by common law certiorari pursuant to section 27-9-114 *et seq.* of the Tennessee Code. Instead, the petition should be couched in terms of a review of the decision of the Civil Service Commission pursuant to section 4-5-322 of the Tennessee Code. *See Maasikas v. Metro. Gov't of Nashville & Davidson County*, No. M2002-02652-COA-R3-CV, 2003 Tenn. App. LEXIS 889, at *3 (Tenn. Ct. App. Dec. 22, 2003); *Woods v. Metro. Gov't of Nashville & Davidson County*, No. M2001-03143-COA-R3-CV, 2003 Tenn. App. LEXIS 858, at *4–5 (Tenn. Ct. App. Dec. 10, 2003); *Stephenson v. Town of White Pine*, No. 03A01-9705-CH-00185, 1997 Tenn. App. LEXIS 787, at *3–4 (Tenn. Ct. App. Nov. 13, 1997); *Knoxville Util. Bd. v. Knoxville Civil Serv. Merit Bd.*, No. 03A01-9301-CH-00008, 1993 Tenn. App. LEXIS 438, at *24 (Tenn. Ct. App. June 28, 1993); *City of Memphis v. Owens*, No. 02A01-9109-CH-00202, 1992 Tenn. App. LEXIS 784, at *1 n.1 (Tenn. Ct. App. Sept. 18, 1992). "The powers of Judicial Review possessed by the Chancery Court under T.C.A. § 4-5-322 are much more broad in scope than the powers of review under traditional common law certiorari." *Paris v. City of Lebanon Pers. Review Bd.*, No. 01A01-9702-CH-00054, 1997 Tenn. App. LEXIS 677, at *15 (Tenn. Ct. App. Oct. 3, 1997).

TENN. CODE ANN. § 4-5-322(h) (2003); *see also Holder v. City of Chattanooga*, 878 S.W.2d 952 (Tenn. Ct. App. 1993). In reviewing the decision of a civil service commission, the chancery court is generally confined to reviewing the record of the proceedings before the administrative body. TENN. CODE ANN. § 4-5-322(g) (2003); *see also Howell v. City of Columbia*, No. M2001-00620-COA-R3-CV, 2002 Tenn. App. LEXIS 743, at *8 (Tenn. Ct. App. Oct. 16, 2002). Our supreme court has summarized the standard of review found in section 4-5-322 of the Tennessee Code as follows:

> Thus the UAPA requires that the trial court review factual issues upon a standard of substantial and material evidence. But this is not a broad, *de novo* review. It is restricted to the record and the agency finding may not be reversed or modified unless arbitrary or capricious or characterized by an abuse, or clearly unwarranted exercise, of discretion and must stand if supported by substantial and material evidence.

*CF Indus. v. Tenn. Pub. Serv. Comm'n*, 599 S.W.2d 536, 540 (Tenn. 1980); *see also Humana of Tenn. v. Tenn. Health Facilities Comm'n*, 551 S.W.2d 664, 667 (Tenn. 1977).

"Any party dissatisfied with the decree of the court may appeal to the court of appeals in the manner provided by the Tennessee Rules of Appellate Procedure." TENN. CODE ANN. § 27-9-112(a) (2003). "The scope of review by the appellate courts is no broader or more comprehensive than that of the trial court with respect to evidence presented before the [Commission]." *Watts v. Civil Serv. Bd. for Columbia*, 606 S.W.2d 274, 277 (Tenn. 1980). In reviewing a matter instituted under section 27-9-114 of the Tennessee Code, we will not re-weigh the evidence or attempt to settle disputed issues of fact. *See Goodwin v. Metro. Bd. of Health*, 656 S.W.2d 383, 387 (Tenn. Ct. App. 1983). Instead, this Court is bound by the same standard of review as the chancery court and must likewise review the record before the Commission under the statutory criteria found in section 4-5-322(h) of the Tennessee Code. *CF Indus.*, 599 S.W.2d at 540; *see also Humana of Tenn.*, 551 S.W.2d at 667–68; *Bishop v. Tenn. State Bd. of Accountancy*, 905 S.W.2d 939, 942 (Tenn. Ct. App. 1995).

### Decision of the Civil Service Commission

On appeal, Chief Moore asserts that the Commission had ample authority to reverse the decision of the Memphis Fire Department and reinstate Chief Moore. The City asserts that the Commission exceeded its authority and the chancellor was correct to reverse the Commission's decision.

"The charter of the city is the organic law of the corporation, being to it what the constitution is to the state. . . ." *State v. Bowman*, 814 S.W.2d 369, 373 (Tenn. Ct. App. 1991). A civil service commission must act within the parameters of the charter which created it. *State ex rel. Atkin v. City of Knoxville*, 315 S.W.2d 115, 117 (Tenn. 1958); *see also Fox v. Miles*, No. W2002-01860-COA-R3-CV, 2004 WL 239762, at *6 (Tenn. Ct. App. Feb. 9, 2004). If a civil service commission

exceeds its jurisdiction or authority in reviewing an employee's case, it has acted illegally and in excess of its statutory authority. *City of Memphis v. Civil Serv. Comm'n*, 1985 WL 3717, at *1 (Tenn. Ct. App. 1985).

Section 245 of the City of Memphis Charter ("Charter") provides that "[t]he Civil Service Commission shall have the power and it shall be its duty to conduct hearings to review disciplinary actions, limited to suspensions, dismissals, or demotions of any employees not exempted from the provisions of this article. . . ." Under Section 246, *the City* may terminate, suspend, or demote an employee for "just cause," which the Charter defines as "a reasonable basis for the action taken" *by the City*. Regarding hearings, section 248 mandates that the hearing board of the Commission may, by majority vote, reverse or sustain *the disciplinary action of the City* if the commission finds by preponderance of the evidence that a reasonable basis existed *for the City's disciplinary action*. The City argues that the Commission cannot modify, either directly or indirectly, the City's disciplinary decision, but can only affirm it if a reasonable basis existed for the decision, or reverse if the evidence indicates otherwise.

The Commission conceded in its ruling that the City had a limited number of Air Rescue Chief positions, all of which were located at the Memphis Airport. The Commission also found that the Airport Authority, not the City, revoked Chief Moore's credentials making it impossible for him to work at the Memphis Airport.[9] The only justification set forth by the Commission for reversing the Memphis Fire Department's decision to demote Chief Moore, however, appears to be that Chief Looney did not intervene and insist that the Airport Authority afford Chief Moore due process.

On appeal, Chief Moore attempted to persuade this Court that the Airport Authority is, in actuality, an agent of the City. The Airport Authority was created by the City of Memphis and Shelby County pursuant to the Metropolitan Airport Authority Act (the "Act"), section 42-4-101 *et seq*. of the Tennessee Code. TENN. CODE ANN. § 42-4-101 (2003). In support of his position, Chief Moore directs our attention to the following language found in the Act:

> It is hereby declared that airport authorities created pursuant to this chapter shall be public and governmental bodies *acting as agencies and instrumentalities of the creating and participating municipalities*, and that the acquiring, operating and financing of airports and related facilities by such airport authorities are hereby declared to be for a public and governmental purpose and matters of public necessity.

---

[9] The record contains a copy of the Airport Authority's AOA Driver's License Study Guide which outlines the procedures used by the Airport Authority in enforcing the provisions contained therein. The document states that following a violation of the rules set forth by the Airport Authority, the violator will be provided a Notice of Violation ("NOV") from the Director of Operations and Public Safety or his designee. The violator is also entitled to a hearing before the Director of Operations within fifteen days of receiving a NOV. Director White conceded during his testimony before the Commission that the Airport Authority did not comply with its own policies prior to revoking Chief Moore's credentials.

TENN. CODE ANN. § 42-4-102(a) (2003) (emphasis added).  As additional support for his position, Chief Moore argues that the City appoints the board of commissioners for the Airport Authority, TENN. CODE ANN. § 42-4-105(a)(1)(A) (2003); the City may provide fire and police protection to the Memphis Airport, TENN. CODE ANN. § 42-4-111(6) (2003); and the City, as the creating municipality, is vested with all powers necessary to carry out the Act, including lending money to the Airport Authority, providing water and electricity, and opening and maintaining streets to the Memphis Airport, TENN. CODE ANN. § 42-4-111 (2003).  Accordingly, Chief Moore asserts that the Airport Authority is in effect an agency of the City, and, therefore, the Airport Authority's decision to revoke Chief Moore's credentials in violation of its own policies should be imputed to the City.

We cannot agree with Chief Moore's interpretation of the Act.   It is apparent from reading the Act that the legislature contemplated that an airport authority created under the Act would constitute a separate entity.  While the City is the creating municipality, TENN. CODE ANN. § 42-4-102, the City, upon creation of the airport authority, must adopt a resolution and thereafter "enter into an agreement with the authority for the orderly transfer to the authority of the airport properties, functions, and outstanding obligations of such municipalities." TENN. CODE ANN. § 42-4-104(d)(1) (2003).  This resolution is then filed with the secretary of state's office, where "upon such adoption and filing, the authority shall constitute a body politic and corporate, with all the powers hereinafter provided." TENN. CODE ANN. § 42-4-104(c)(2) (2003).  Once created, the airport authority can sue and be sued, TENN. CODE ANN. § 42-4-107(2) (2003); acquire real or personal property by gift, lease, or purchase, TENN. CODE ANN. § 42-4-107(3) (2003); enter into contractual agreements with the creating municipality, TENN. CODE ANN. § 42-4-107(4) (2003);  apply directly for grants or other financial assistance, TENN. CODE ANN. § 42-4-107(8) (2003); the City may transfer its interest in land to the airport authority by sale, lease, or gift, TENN. CODE ANN. § 42-4-108 (2003); and the airport authority may "borrow money for any of its corporate purposes and issue its revenue bonds," TENN. CODE ANN. § 42-4-109(a)(1) (2003).  Accordingly, the Act contemplates that the Airport Authority, once created, constitutes a separate and distinct entity.

Although the actions by the Airport Authority in revoking Chief Moore's credentials are admittedly suspect, that decision cannot cloud the fact that, without these credentials, Chief Moore is unable to carry out his duties as an Air Crash Chief at the Memphis Airport.  In analyzing the Commission's ruling regarding Chief Moore, we are mindful that:

> A reviewing court should not apply Tenn. Code Ann. § 4-5-322(h)(4)'s "arbitrary and capricious" standard of review mechanically.  In its broadest sense, the standard requires the court to determine whether the administrative agency has made a clear error in judgment.  An arbitrary decision is one that is not based on any course of reasoning or exercise of judgment . . . or one that disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion.

Likewise, a reviewing court should not apply Tenn. Code Ann. § 4-5-322(h)(5)'s "substantial and material evidence" test mechanically. Instead, the court should review the record carefully to determine whether the administrative agency's decision is supported by "such relevant evidence as a rational mind might accept to support a rational conclusion." The court need not reweigh the evidence . . . and the agency's decision need not be supported by a preponderance of the evidence. The evidence will be sufficient if it furnishes a reasonably sound factual basis for the decision being reviewed.

*Jackson Mobilphone Co., Inc. v. Tenn. Pub. Serv. Comm'n*, 876 S.W.2d 106, 110–11 (Tenn. Ct. App. 1993) (citations omitted).

This Court faced a similar factual situation to the one in the present case in *Wheeler v. City of Memphis*, 685 S.W.2d 4 (Tenn. Ct. App. 1984). In *Wheeler*, the Airport Authority employed the appellant as a security officer, but he was required, as a prerequisite to his employment, to maintain his commission from the Memphis Police Department to carry a weapon. *Id*. at 5. After the employee was involved in a shooting incident, the Memphis Police Department held a hearing to determine whether to revoke the employee's commission to carry a firearm. *Id*. After the police department revoked his commission, the Airport Authority notified the employee they were terminating his employment because he could no longer fulfill his duties as an airport security officer. *Id*. On appeal to the Civil Service Commission, that body held that the Airport Authority acted with just cause in terminating the employee because he no longer held a commission to carry a firearm. *Id*. In affirming the Commission's decision, we stated:

Although the Airport Authority acted upon the police board's suspension of the appellant's commission, and the Airport Authority's action was reviewable by the Civil Service Commission because it involved dismissal of an employee, *it does not follow that the Civil Service Commission could therefore review the decision of the board in revoking appellant's commission to carry a firearm. The administrative board's decision did not of itself relate to the appellant's employment status; consequently, it did not fall within the purview of the Civil Service Commission's jurisdiction*.

*Id*. at 6 (emphasis added).

The City of Memphis Charter permits the Commission to review disciplinary actions taken *by the City*, not another agency. The Commission exceeded its statutory authority by basing its decision to reverse the ruling of the City in demoting Chief Moore on a review of the actions taken by the Airport Authority. TENN. CODE ANN. § 4-5-322(h)(2) (2003); *see also Deaderick Paging Co., Inc. v. Tenn. Pub. Serv. Comm'n*, 867 S.W.2d 729, 731 (Tenn. Ct. App. 1993) ("The court may . .

. reverse the decision if it violates statutory provisions or is in excess of the agency's statutory authority."). By removing from consideration the actions of the Airport Authority in revoking Chief Moore's credentials, we are left with the fact that, without those credentials, Chief Moore cannot properly perform his duties as an Air Rescue Chief at the Memphis Airport.[10] The loss of the required credentials alone constituted substantial and material evidence on which the City could base Chief Moore's demotion. *See Wheeler*, 685 S.W.2d at 6; *see also* TENN. CODE ANN. § 4-5-322(h)(5) (2003). Accordingly, we find the Commission's decision to reinstate Chief Moore to the position of Air Crash Chief, which he could not perform without the proper credentials, amounted to an arbitrary and capricious finding, and we affirm the chancery court's decision in reversing that ruling. *See CF Indus. v. Tenn. Pub. Serv. Comm'n*, 599 S.W.2d 536, 540 (Tenn. 1980); *Jackson Mobilphone Co., Inc. v. Tenn. Pub. Serv. Comm'n*, 876 S.W.2d 106, 110-11 (Tenn. Ct. App. 1993).

### Attorney's Fees

Chief Moore has also requested that this Court award him attorney's fees pursuant to section 4-5-325 and section 27-9-114(b)(3) of the Tennessee Code, alleging that the City acted unfairly and without just cause in respect to his demotion.

Section 4-5-325 provides, in relevant part, as follows:

> **Payment of costs to cited party**.
> (a) When a *state agency* issues a citation to a person, local government entity, board or commission for the violation of a rule, regulation or statute and such citation results in a contested case hearing, at the conclusion of such hearing, the hearing officer or administrative law judge may order such agency to pay to the party issued a citation the amount of reasonable expenses incurred because of such citation, including a reasonable attorney's fee, if such officer or judge finds that the citation was issued:
> (1) Even though to the best of such agency's knowledge, information and belief formed after reasonable inquiry the violation was not well grounded in fact and was not warranted by existing law, rule or regulation; or

---

[10] At the hearing before the Commission, Director Anderson testified that the Memphis Fire Department has only three Air Crash Chief positions, all of which are located at the Memphis Airport. Director Anderson and Chief Looney both testified that the credentials provided by the Airport Authority are a prerequisite for the job of Air Crash Chief, without which Chief Moore would be unable to perform the duties associated with that position. Counsel for Chief Moore, upon cross-examining Chief Looney, brought out the fact that a person without the proper credentials could conceivably be on airport property if he were escorted at all times and did not have to operate a vehicle. This same argument was put before the chancery court on appeal of the Commission's decision. Given the demands of the job faced by a fireman responding to emergencies, we agree with the chancellor's conclusion that this is not a feasible alternative.

>(2) For an improper purpose as to harass, to cause delay or cause needless expense to the party cited.

TENN. CODE ANN. § 4-5-325(a) (2003) (emphasis added).[11]   Because we find neither of the alternative grounds listed in the statute to be present in this case, we deny Chief Moore's request.

### Conclusion

For the reasons stated above, we affirm the decision of the chancery court in reversing the decision of the City of Memphis Civil Service Commission.  Costs of this appeal are taxed against the Appellant, Tommy Lee Moore, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE

---

[11] We have serious reservations concerning whether this statute would even apply to Chief Moore, given the fact that the *City of Memphis* was the party taking action against Chief Moore in this case.  Section 27-9-114(b), governing review of a decision by a civil service commission, only references the judicial review standards found in section 4-5-322 of the UAPA.  TENN. CODE ANN. § 27-9-114(b)(1) (2003).  In order for the provision of the UAPA relied on by Chief Moore to apply, the City would need to qualify as a "state agency."  "Agency," as defined by the UAPA, "means each *state* board, commission, committee, department, officer, or any other unit of *state government* authorized or required by any statute or constitutional provision to make rules or to determine contested cases[.]" TENN. CODE ANN. § 4-5-102(2) (2003) (emphasis added).  However, we do not need to reach this issue in the present case.