**Ted FOX, Director of Public Works, A Division of Shelby County Government, and Shelby County Government**

v.

**Thomas H. MILES and Shelby County Civil Service Merit Board.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Oct. 15, 2003 Session.

Feb. 9, 2004.

Permission to Appeal Granted by Supreme Court Sept. 7, 2004.

Motion to Voluntary Dismiss Case Granted March 21, 2005.

Eugene C. Gaerig, Memphis, Tennessee, for the appellant Ted Fox, Director of Public Works, a Division of Shelby County Government, and Shelby County Government.

Earle J. Schwarz, Memphis, Tennessee, for the appellees Thomas H. Miles.

## OPINION

HOLLY M. KIRBY, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

This is an employment case. The employee worked for the county. The employee's county supervisor directed the employee to submit a request for overtime pay from the county for services rendered to a local university during his off hours. In addition, the employee's county supervisor pressured the employee to perform investigative services for the county, outside of his normal duties. The employee received payment for the investigative services, in violation of a county charter provision proscribing conflicts of interest. As a result, the employee was terminated. The employee appealed his termination to the county civil service merit board. The merit board reversed the employee's termination and ordered his reinstatement. The county appealed to the chancery

court, which affirmed the reinstatement. We reverse and remand, finding that the merit board's reinstatement of the employee violated a county charter provision which required that the employee be terminated for the conflict of interest.

Respondent/Appellee Thomas H. Miles began his employment with Shelby County in 1996 as the Shelby Farms Range Master. As Range Master, Miles was responsible for supervising activities at the Shelby Farms gun range. Miles's supervisor was Tim Martin ("Martin"), and Martin reported to Petitioner/Appellant Ted Fox ("Fox"), the Shelby County Director of Public Works.

Miles's employment was subject to the Shelby County Charter, as well as to the Shelby County Employee Handbook. Section 5.08(A) of the Shelby County Charter, entitled "Conflict of Interest," provides:

No officer or employee of the county, whether elected or appointed, shall in any manner whatsoever be interested in or receive any benefit from the profits of [or] emoluments of any contract job, work or service for the county. . . . [N]or shall there be received, directly or indirectly, any part of any fee, commission, or other compensation paid by . . . the county. . . .

Thus, County employees or officers, whether elected or appointed, were proscribed from entering into contracts with the County. Section 5.08(C) is the penalty provision: "Any officer or employee of the county who willfully conceals any such interest or violates any of the provisions of this section shall forfeit his or her office." Section 3.03(N) of the Charter vests in the county mayor the power to enter Shelby County into contracts. Contracts for professional services are governed by Shelby County purchasing procedure CA 020, which requires department heads to submit requests for professional services to a separate administration, which in turn must bid out the work. A committee reviews the bids and submits a recommendation to the county mayor. The Shelby County Employee Handbook includes a list of major offenses, warranting a high level of disciplinary action. The list includes "[m]isappropriation, destruction, theft and/or conversion of County property" and "[f]alsification of any information required by the County."

To supplement his income, in his off hours, Miles, a licensed private investigator, operated an investigative service under the names Hawk Security Company and Hawk Equipment Company (collectively "Hawk Security"). On two occasions, in late 1997 and again in 1999, Martin directed Miles, doing business as Hawk Security, to perform two separate investigations for Shelby County. Martin directed Miles to investigate persons and entities who sought to do business with Shelby Farms, including Mid South Concerts. This was outside of Miles' duties as the gun range master. Hawk Security was paid by Shelby County for both investigations.

On another occasion in 1998, Miles, a certified firearms instructor, entered into an oral agreement with University of Memphis professor Steve James ("Professor James") to train Professor James's ranger students at the Shelby Farms gun range. Under the agreement, Miles was to be paid by the University. Martin approved the use of the Shelby Farms gun range and other county buildings for the training, and Miles conducted the training during his off hours. After Miles had completed the training, however, Professor James told Miles that the University would be unable to pay him as agreed, because Professor James's costs for the program had exceeded his budget. Martin directed Miles not to bill the University,

but rather to submit time cards requesting that Shelby County pay him overtime for the time spent on the gun range training the students. Miles complied, noting on his time card: "Overtime was for U.M. Training." In addition, Miles submitted an invoice to Shelby County under the name Hawk Equipment Co. for reimbursement of the expenses related to the training. Miles's request for overtime pay was approved and Shelby County cut a check to Hawk Equipment Co. for the training expenses.

The checks paid to Hawk Security and the overtime payments to Miles for the ranger training went unnoticed. In August 2000, however, Miles was talking with Ted Fox about what he perceived to be problems at Shelby Farms stemming from Martin's mismanagement. In the course of the conversation, he mentioned to Fox the two investigations conducted by Hawk Security and the ranger training class taught by Miles as anecdotal evidence of Martin's disregard for Shelby County policy. This conversation led to Ron Banks ("Banks"), Fox's assistant, interviewing Miles in spring 2001 concerning Miles's allegations against Martin. Miles discussed with Banks the private investigations and the ranger training. Later, Tom Cates ("Cates"), an internal audit manager with Shelby County, performed an investigation concerning the financial aspect of the matters Miles had revealed to Fox and Banks. As part of that investigation, in August 2001, Cates took Miles's deposition, asking questions based on Banks's interview with Miles. On October 31, 2001, Miles received a Notice of Proposed Major Discipline charging him with violations of:

a. The Shelby County Charter, § 3.03(N) (Entering into a Contract not Properly Executed);

b. The Shelby County Charter, § 5.08(A) (Conflict of Interest);

c. The Shelby County Contract Administration Manual § II CA 020 (Violation of Contract Procedures); and,

d. The Shelby County Personnel Management System, § 703 (Cause/Major Offenses: Falsification of Information Required by the County; Misappropriation of County property).

The letter advised Miles that he was subject to major discipline up to and including termination. Miles subsequently had a Loudermill hearing.

The County sent Miles a letter dated December 5, 2001, terminating him from his employment as the Shelby Farms Range Master. The letter advised him that he was being terminated for violation of sections 5.08(A) and 3.03(N) of the Shelby County Charter, section II CA–020 of the Shelby County Contracts Administration Manual, and section 703 of the Shelby County Personnel Management System. Under the Description of Charges, the letter noted that Hawk Security had been paid for two background checks, that Miles had been paid overtime for training the University of Memphis students, that he received an expense check for that training, and that he had made unauthorized use of Shelby County buildings for the training. Miles appealed his termination to the Shelby County Civil Service Merit Board.

At the hearing before the Civil Service Merit Board, Miles testified, but Martin did not. Miles explained the overtime he submitted for his work training the University of Memphis students. He testified that, when he found out that Professor James could not pay for the training out of his University budget, he asked his supervisor Martin about the best method of billing the University. Martin had a close working relationship with Professor James; Professor James regularly provid-

ed extra training to the Shelby Farms rangers and James's graduates were regularly employed by the park. Miles testified that Martin feared a disruption of this relationship with the University and, using "profane and vulgar terms," vociferously forbade Miles from billing the University, threatening Miles with his job. Miles observed that Martin was "a man you didn't want to cross." Miles said that Martin ordered him to submit an overtime request to the County for his work for the University, telling him he would be fired if he did not. Miles initially resisted doing so, since he thought that it was immoral to charge Shelby County for services provided to the University of Memphis. Later, Miles remembered that Shelby Farms policy required that Miles, as range master, be present at the range when it was in use but closed to the public, and that he was expected to submit to the County as overtime any time spent at the range on such occasions. Consequently, on that basis, Miles submitted the overtime request, noting on his request that it was for work for the University. Miles did not testify about the training expense check to Hawk Security, but in his earlier interview with Cates, Miles said that Martin told him to give him a separate invoice and he would make sure that Miles's expenses were reimbursed.

Miles also testified before the Board about his private investigation work for the County. Miles admitted that his investigative work constituted professional services and a conflict of interest, but explained the circumstances under which it arose. Miles testified that Martin asked him to investigate a corporation that sought to do business with Shelby County, and told Miles that Fox specifically requested that Miles do a background check of the corporation. Miles said that when he noted to Martin that such a job should be bid out to other investigative services,

Martin began pressuring him, saying that if Miles did the job, Fox "won't forget it," but if Miles refused to do the investigation Fox "won't forget that, either." Miles testified that the second investigative job he performed for the County was initiated by a phone call from Martin, during which Martin said Fox needed some information on another corporation. Miles admitted that he never talked to Fox directly about either investigation, and that he was not present when Fox and Martin discussed the matters Miles investigated. Fox testified at the hearing as well, and said that he did not directly tell Miles to perform any investigative services on behalf of Shelby County, nor was he aware of the connection between Hawk Security and Miles when he signed checks written to Hawk Security.

The Board issued its decision in March 2002. It found that Miles was not guilty of the charges, and overturned his termination, holding:

> It is the opinion of the Board that the Petitioner was actively involved in a pay inequity involving overtime and participated in providing professional services in violation of County policy. However, the Board finds that these actions were done with the knowledge and at the direction of his supervisor, which mitigates the Petitioner's responsibility.

Thus, though the Board found that Miles had violated county policy, it concluded that he should not be held responsible because his actions were directed by his supervisor, Martin.

The County then filed a "Petition for Issuance of Common Law Writ of Certiorari and Supercedeas" in Chancery Court, requesting the court to reverse the Board's decision. Fox argued that the Board's decision was illegal, arbitrary and capricious, and not supported by evidence.

After reviewing the record and hearing statements by counsel, the Chancery Court held that the Board did not exceed its statutory authority in overturning the termination. The Chancery Court reasoned that the Shelby County employee discipline policies and procedures do not mandate termination when there is just cause, and held that the Board's finding that Martin directed Miles to take these actions supported the Board's decision. The Chancery Court concluded further that the Board did not act arbitrarily or capriciously, as evidenced by the full hearing consisting of live testimony and exhibits, and affirmed the Board's decision to overturn Miles's termination. From that order, the County now appeals.

■ Chapter 110, Private Acts 1971 established the Civil Service Merit System for employees of Shelby County. Private Acts, ch. 110, § 1, 493 (1971); *Austin v. Shelby County Gov't Register's Office*, 761 S.W.2d 298, 299 (Tenn.Ct.App.1988). The Act further created the Civil Service Merit Board, (Private Acts, ch. 110, § 3, 494 (1971)), which has the power and duty to hear the appeal of a county employee's removal, suspension or reduction in rank or compensation, (Private Acts, ch. 110, § 6(d), 497 (1971)), and to affirm, modify or revoke the appealed discipline. Private Acts, ch. 110, § 23, 505–06 (1971); *Austin*, 761 S.W.2d at 299. The decision of the Civil Service Merit Board may be reversed or modified only when "the Board has acted in violation of constitutional or statutory provisions or in excess of its own statutory authority; has followed unlawful procedure or been guilty of arbitrary or capricious action; or has acted without material evidence to support its decision." *Watts v. Civil Serv. Bd. for Columbia*, 606 S.W.2d 274, 277 (Tenn.1980); *Gross v. Gilless*, 26 S.W.3d 488, 492 (Tenn.Ct.App. 1999).

■ It is well settled in Tennessee that a municipal charter is mandatory, taking precedence over ordinances and limiting the actions of the municipality's agents, who must follow the charter. *State ex rel. Lewis v. Bowman*, 814 S.W.2d 369, 373 (Tenn.Ct.App.1991) (quoting *Marshall & Bruce Co. v. City of Nashville*, 109 Tenn. 495, 71 S.W. 815, 819 (1903)). This requirement extends to a civil service board, which may not set aside or waive a positive requirement of the municipality's charter in rendering its decisions. *State ex rel. Atkin v. City of Knoxville*, 203 Tenn. 622, 315 S.W.2d 115, 117 (1958).

On appeal, the County argues that the Board's decision should be reversed because the decision violates section 5.08 of the Shelby County Charter, the conflict of interest provision. The County also argues that the Board's decision to reinstate Miles was arbitrary and capricious because the County charter mandates the termination of employees who contract with the County and because it can never be permissible for an employee to charge the County for work not performed for the benefit of the County. Finally, the County asserts that the fact that Martin directed Miles to perform the investigations and submit the request for overtime was not substantial and material evidence that could support the Board's ruling.

In response, Miles argues that the Board did not violate the Shelby County Charter by reinstating him. First, Miles argues that the Board did not waive section 5.08(A) of the Shelby County Charter, because the Board did not expressly find that he had violated that provision. Second, Miles asserts that the facts of *State ex rel. Atkin v. City of Knoxville*, cited above for the proposition that the Board is obligated to follow the charter, are distinguishable from the case at bar and thus does not support the County's position.

Finally, Miles argues that section 5.08(A) does not control in this case, because its provisions are addressed to officers or employees of the county, "whether elected or appointed," and Miles claims he was neither elected nor appointed. Miles maintains that the Board's decision was supported by substantial and material evidence and was neither arbitrary nor capricious because the Board based its ruling on the fact that Martin directed Miles to take the actions for which he was terminated.

As noted above, the Civil Service Merit Board has the power to modify and set aside disciplinary actions against county employees, so long as the Board does not violate constitutional or statutory provisions, exceed its statutory authority, act arbitrarily or capriciously, follow unlawful procedure, or fail to support its decision with material evidence. *Watts,* 606 S.W.2d at 277. In *Austin v. Shelby County Government Register's Office,* for example, this Court upheld the Board's decision to reinstate the county employee and impose a lighter penalty for the employee's insubordination. *Austin v. Shelby County Gov't Register's Office,* 761 S.W.2d 298, 298, 300 (Tenn.Ct.App.1988). A review of the record revealed that there was material evidence to support the Board's decision to soften the sanction and that nothing indicated that the Board's actions regarding the severity of the penalty was arbitrary and capricious. *Id.* at 300. However, unlike the case at bar, the *Austin* Board's decision to modify the employee's sanctions did not implicate the county charter or any constitutional or statutory provision. The Civil Service Merit Board must act within the parameters of the county charter. *Atkin,* 315 S.W.2d at 117.

■ Although the facts in *State ex rel. Atkin v. City of Knoxville* are inapposite to those in the present case, there is no mistaking the clear language adopted by the court: " 'The civil service board has no discretion and no authority to set aside or waive a positive requirement of a charter provision.' " *State ex rel. Atkin v. City of Knoxville,* 203 Tenn. 622, 315 S.W.2d 115, 117 (1958) (quoting the trial court below). This statement is consistent with the supremacy our courts have always given to charters within their respective municipalities. *See State ex rel. Lewis v. Bowman,* 814 S.W.2d 369, 373 (Tenn.Ct.App.1991) (quoting *Marshall & Bruce Co. v. City of Nashville,* 109 Tenn. 495, 71 S.W. 815, 819 (1903)). Accordingly, the Shelby County Civil Service Merit Board was obligated to act within the parameters of the Shelby County Charter.

■ Miles argues that Section 5.08 of the County charter does not apply to him because he is neither "elected" nor "appointed." It is undisputed, of course, that Miles is not elected. Exhibit A to the charter, however, quotes the private act which establishes the Civil Service Merit System, designating employees such as Miles as "classified" and referring to such employees as *"appointed* to a position or office in the classified service." Private Acts, ch. 110, § 2(e), 494 (1971) (emphasis added); *see also* Private Acts, ch. 110, § 13, (1971) (referring to "applicants for appointment in the system...."). Miles cites no authority supporting his assertion that an employee such as him is not subject to the charter's prohibition against conflicts of interest, and we find this argument without merit.

In this case, section 5.08 not only prohibits Shelby County employees from entering into a conflict of interest with the county, but it also sets out the penalty for doing so. Section 5.08(C) provides: "Any officer or employee of the county who wilfully conceals any [conflict of] interest or violates any of the provisions of this sec-

tion shall forfeit his or her office." This language is mandatory and unequivocal.

In the case at bar, an employee of Shelby County, appointed to serve as the Range Master of Shelby Farms, Miles was governed by section 5.08 of the County charter. This clearly proscribed him from entering into any arrangement that constituted a conflict of interest with the County. It is true that the Board did not expressly find that Miles violated the charter; it held only that Miles's actions were mitigated by the fact that they were done at the direction of his supervisor. Miles's violation of this charter provision, however, is undisputed. Miles admitted that receiving payment from the County for performing investigative services on the County's behalf violated County policy by creating a conflict of interest. The Board was clearly sympathetic to Miles's position, and if the Board had the discretion to reverse Miles's termination, there was ample reason to do so. Unfortunately, the mandate of the charter is clear and admits no exception. Thus, the Board was obligated to implement the penalty provision of section 5.08 and affirm Miles's termination, regardless of any mitigating circumstances. Consequently, the trial court's decision, affirming the Board, must be reversed.

All other issues raised on appeal are pretermitted.

The decision of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion. Costs are taxed to the appellee, Thomas H. Miles, for which execution may issue if necessary.