IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 5, 2018

## HOWARD HAWK WILLIS v.
## GRAND JURY FOREPERSON BEVERLY JOHNSON

**Appeal from the Chancery Court for Bradley County**
**No. 2017-CV-173      Jerri S. Bryant, Chancellor**

_____

### No. E2017-02225-COA-R3-CV

_____

The *pro se* appellant, a state inmate incarcerated on capital murder convictions, filed a petition for a writ of mandamus in the Bradley County Chancery Court ("trial court"). Claiming to have information regarding a homicide other than those for which he was convicted, the petitioner requested that the trial court direct the Bradley County Grand Jury foreperson to grant him the right to testify before the grand jury pursuant to Tennessee Code Annotated § 40-12-104 (2014). The petitioner subsequently filed a motion to be transported for a hearing, requesting that the trial court issue a *habeas corpus ad testificandum*. The State of Tennessee ("the State") then filed a response in opposition to the petition for writ of mandamus. The petitioner responded by filing a motion to strike the State's response, arguing that the State was not a proper party to this action. On October 26, 2017, the trial court entered an order dismissing the petition for writ of mandamus, finding, *inter alia*, that the petitioner possessed no mandatory right to appear before the grand jury. The petitioner has appealed. Discerning no reversible error, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
### Affirmed; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which ANDY D. BENNETT, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Howard Hawk Willis, Nashville, Tennessee, Pro Se.

Crystal R. Freiberg, Bradley County Attorney, Cleveland, Tennessee, for the appellee, Grand Jury Foreperson Beverly Johnson.

## OPINION

### I. Factual and Procedural Background

The petitioner, Howard Hawk Willis, was convicted following a jury trial in 2010 of two counts of premeditated first-degree murder and one count of felony murder in the perpetration of a kidnapping for the October 2002 murders of two teenaged victims, Adam Chrismer and Samantha Chrismer. *See State v. Willis*, 496 S.W.3d 653, 665-66 (Tenn. 2016), *cert. denied*, 137 S.Ct. 1224 (Mar. 6, 2017). Mr. Willis was sentenced to death for each conviction, and his convictions and sentences were upheld on direct appeal by the Tennessee Court of Criminal Appeals, *see State v. Willis*, No. E2012-01313-CCA-R3-DD, 2015 WL 1207859, at *1 (Tenn. Crim. App. Mar. 13, 2015), and the Tennessee Supreme Court, *see State v. Willis*, 496 S.W.3d at 761. Mr. Willis remains confined at the Riverbend Maximum Security Institution in Nashville.

On July 5, 2017, Mr. Willis initiated the instant action by filing a petition for a writ of mandamus in the trial court, claiming to have "credible evidence" regarding the 2002 murder of his stepfather, Samuel Johnson Thomas, and alleged "official misconduct that has occurred within the investigation of [Mr. Thomas's] murder by the Bradley County Sheriff's Department." Naming as a "defendant"/respondent the then foreperson of the Bradley County Grand Jury, Beverly Johnson ("the Foreperson"), Mr. Willis requested that the trial court issue a writ of mandamus ordering the Foreperson to "meet with [Mr. Willis] allowing him to provide the evidence he has in the murder of Samuel Johnson Thomas and of official misconduct in said investigation thereof." In support of his petition, Mr. Willis relied on Tennessee Code Annotated § 40-12-104(a)-(c) concerning witnesses in grand jury proceedings.

Mr. Willis attached several documents to his petition, including affidavits executed by him; correspondence initiated by him with the Tennessee Attorney General, Tenth Judicial District Attorney General, Bradley County Sheriff's Department, and the previous Bradley County Grand Jury foreperson; two petitions he had prepared to file in the Bradley County Criminal Court ("criminal court") seeking to testify before the grand jury; and a printout from the Tennessee Offender Management Information System ("TOMIS") reflecting his security status as an inmate. An attached criminal court petition, styled as a "Petition to Enforce the Petitioners [sic] Statutory Right to Testify Before the Grand Jury," included a certificate of service executed by Mr. Willis, indicating that he had served the petition on the "Bradley County District Attorney's Office" on May 2, 2014. In a subsequent letter to the state attorney general at the time, Mr. Willis asserted that the criminal court had not filed this petition upon the alleged direction of the criminal court judge and district attorney general. Mr. Willis's attachments to the petition at issue in the present action also included an undated

"Petition for Writ of Habeas Corpus Ad Testificandum," styled for filing in the criminal court with the Foreperson and District Attorney General Steven Crump named as "defendants"/respondents.

As the Foreperson notes, Mr. Willis had also sought injunctive relief in federal court under 42 U.S.C. § 1983, filing a complaint against General Crump in the United States District Court for the Eastern District of New York, which was subsequently transferred to the United States District Court for the Eastern District of Tennessee at Chattanooga. *See Willis v. Crump*, No. 1:15-cv-258-CLC-CHS, 2015 WL 8781215, at *1 n.1 (E.D. Tenn. Dec. 14, 2015) (explaining that at the time he filed the federal complaint, Mr. Willis was in the Eastern District of New York "in connection with a resentencing hearing on a cocaine conspiracy conviction"). Mr. Willis requested that the federal court enjoin General Crump and "'state officials, employees, assigns, and et als [sic]' from depriving [Mr. Willis] of his right to present evidence to a Bradley County grand jury—a right allegedly secured to him by Tenn. Code Ann. § 40-12-104(a) and (b)." *Id.* at *1. Determining, *inter alia*, that Mr. Willis's complaint did "not present a [federal] constitutional violation," the federal court dismissed Mr. Willis's complaint in December 2015. *Id.* at *4.

On July 14, 2017, Mr. Willis filed in the trial court a "Motion to be Transported for Hearing," requesting that the trial court issue a *habeas corpus ad testificandum* "to insure [Mr. Willis's] presence for hearing." He concomitantly filed a "Petition for Writ of Habeas Corpus Ad Testificandum" as well. On July 26, 2017, the State, acting through General Crump, filed a response in the trial court in opposition to Mr. Willis's petition for writ of mandamus, arguing, *inter alia*, that "[t]here is no basis, process or authority for transporting an inmate to appear before a grand jury." The State also asserted that the issuance of a writ of mandamus would not be proper because Mr. Willis was "attempting to collaterally attack his convictions." The State summarized that "[i]n all of his material presented, [Mr. Willis] indicates that if he is allowed to present evidence, then that evidence of a past crime would somehow exonerate him with regard to his current convictions."

The State attached to its response, *inter alia*, a letter dated October 11, 2016, from Bradley County Criminal Court Judge Sandra N.C. Donaghy to Mr. Willis, in which Judge Donaghy had responded to a letter previously written by Mr. Willis to the Foreperson, who had requested Judge Donaghy's advice in responding. Judge Donaghy stated in pertinent part:

> It is the duty of the district attorney general to prosecute all violations of the state criminal statutes and perform all prosecutorial functions attendant thereto for the protection of the state or in public

3

interest. Accordingly, I will transfer the materials sent to Ms. Johnson to General Crump for investigation and review. I encourage you to work with his office in this process.

I agree with your assertion that T.C.A. [§] 40-12-104 allows a citizen to apply to present a case to the grand Jury for review. The Grand Jury will allow you to present this matter once you are released from custody. There is no basis, process, or authority for transporting an inmate to appear before a grand jury. The system has to balance your interest in providing information against the integrity of the correctional system. You can do exactly what you are trying to do by providing your information to the District Attorney through letters, interviews, and depositions.

Mr. Willis filed a motion to strike the State's response on August 11, 2017, asserting that the State lacked standing and that if representation were provided to the Foreperson, it should be by the Bradley County attorney. The record includes no indication that the trial court ruled on the motion to strike.[1]

On October 26, 2017, the trial court entered an order dismissing Mr. Willis's petition for writ of mandamus. The court specifically found in relevant part:

This cause came for review on the Petition for Writ of Mandamus wherein [Mr. Willis] has requested to exercise his "rights" under T.C.A. § 40-12-104 to testify before the Grand Jury. [Mr. Willis] claims to have knowledge concerning the murder of Samuel Johnson Thomas. [Mr. Willis] claims to have credible evidence regarding the Samuel Johnson Thomas [homicide] and official misconduct which has occurred in the investigation of his murder by the Bradley County Sheriff's Department. [Mr. Willis] claims that he tried to provide the evidence to the Bradley County District Attorney General's Office and the Bradley County Sheriff's Department, both of whom he alleges did not respond to him. This matter was previously brought to Judge Sandra Donaghy's attention pursuant to the petition filed by [Mr. Willis] and apparently, Judge Donaghy, if the statements of [Mr. Willis] are true, told [Mr. Willis] that the Grand Jury would allow him to present his evidence once he is released from custody. Judge Donaghy previously told [Mr. Willis] there is no basis, process or authority for transporting an inmate to appear before the Grand Jury.

---

[1] We will address the resolution of Mr. Willis's motion to strike the State's response in a subsequent section of this Opinion.

This Court will further note the Grand Jury has the authority to send for witnesses.

This Court has read the file sent by [Mr. Willis] to the Chancery Court for Bradley County, Tennessee. This Court is unable to determine whether or not the information in this file has been given to the District Attorney General or to the Grand Jury Foreperson and this Court finds the documentation provided would allow others to present the same information to the Grand Jury. [Mr. Willis] alleges there is a federal investigator who has investigated these facts and has information. That federal investigator would be allowed to provide the information to the Grand Jury.

It is also unclear whether [Mr. Willis] is serving a sentence for the same crime he is wanting to be investigated. [Mr. Willis] has alleged he has at least one attorney and that attorney could, likewise, appear before any Grand Jury. This Court will note the statute provides that [Mr. Willis], **may** testify before the Grand Jury. This is not mandatory and there are other venues that could be pursued in this matter.

Therefore the Petition for Writ of Mandamus is hereby dismissed and a copy of this order will be provided to the District Attorney General's Office for such other action as the District [Attorney] deems appropriate.

On November 13, 2017, Mr.Willis filed a notice of appeal with this Court and, on the same day, a "Motion for Reconsideration of the Writ of Mandamus" with the trial court. The record contains no disposition of Mr. Willis's motion for reconsideration. We note that the Tennessee Rules of Civil Procedure do not authorize motions to reconsider a trial court order. *See Goetz v. Autin*, No. W2015-00063-COA-R3-CV, 2016 WL 537818, at *5 (Tenn. Ct. App. Feb. 10, 2016), *perm. app. denied* (Tenn. June 24, 2016) (citing *Harris v. Chern*, 33 S.W.3d 741, 743 (Tenn. 2000)). Moreover, we determine that because the notice of appeal was filed on the same day as the motion for reconsideration, subject matter jurisdiction properly transferred to this Court upon the filing of the notice of appeal. We therefore discern no error in the trial court's declining to address the motion for reconsideration and essentially treating the motion as waived.

## II. Issues Presented

Mr. Willis presents five issues on appeal, which we have restated as follows:

1. Whether the trial court abused its discretion by arbitrarily denying Mr. Willis's writ of mandamus.

2. Whether Mr. Willis has a due process right, pursuant to Tennessee Code Annotated § 40-12-104(a)-(c), to present testimony and other evidence regarding the homicide of Mr. Thomas and investigation therein before the Foreperson and two grand jury members of his choosing; and if so, whether the trial court violated Mr. Willis's due process right to present such testimony and other evidence.

3. Whether the trial court clerk and master violated Tennessee Rules of Civil Procedure 4.01, 4.02, and 5.02 and Mr. Willis's rights to due process and court access under the First and Fourteenth Amendments to the United States Constitution and Article 1, Sections 8, 14, and 17 of the Tennessee Constitution by declining to issue and serve a summons upon the Foreperson with a copy of Mr. Willis's petition.

4. Whether the trial court violated Rules 1.1, 1.2, and 2.12 of the Tennessee Supreme Court Rule 10 Code of Judicial Conduct by failing to properly supervise the trial court clerk and master and by failing to provide a remedy for the clerk and master's purported violations.

5. Whether actions of concealment allegedly committed by the Foreperson, the Bradley County District Attorney General, and subordinates of the Bradley County District Attorney General in relation to the investigation of Mr. Thomas's homicide violated Mr. Willis's rights to due process and court access under the First and Fourteenth Amendments of the United States Constitution and Article I, Sections 8, 14, and 17 of the Tennessee Constitution.

The Foreperson presents an additional issue, which we have restated slightly as follows:

6. Whether Mr. Willis's claims are barred by the principles of *res judicata* and collateral estoppel.

### III. Standard of Review

Our review of the trial court's judgment following a non-jury proceeding is *de novo* upon the record with a presumption of correctness as to the trial court's findings of

fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 204 (Tenn. 2012). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006) (citing *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001)). We review the trial court's conclusions of law *de novo* with no presumption of correctness. *Hughes v. Metro. Gov't of Nashville & Davidson Cty*, 340 S.W.3d 352, 360 (Tenn. 2011).

A trial court's decision concerning whether to grant a writ of mandamus is a discretionary one. *Grant v. Foreperson for Bradley Cty. Grand Jury*, No. E2009-01450-COA-R3-CV, 2010 WL 844912, at *5 (Tenn. Ct. App. Mar. 11, 2010) ("[I]t has long been settled in Tennessee that the granting of the writ of mandamus, even when the right thereto is clear, lies in the sound discretion of the court."). As this Court has explained, "a trial court will be found to have 'abused its discretion' only when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *In re Estate of Greenamyre*, 219 S.W.3d 877, 886 (Tenn. Ct. App. 2005), *perm. app. denied* (Tenn. Mar. 12, 2007) (internal citations omitted).

In reviewing pleadings, we "must give effect to the substance, rather than the form or terminology of a pleading." *Stewart v. Schofield*, 368 S.W.3d 457, 463 (Tenn. 2012) (citing *Abshure v. Methodist Healthcare-Memphis Hosp.*, 325 S.W.3d 98, 104 (Tenn. 2010)). We note also that pleadings "prepared by pro se litigants untrained in the law should be measured by less stringent standards than those applied to pleadings prepared by lawyers." *Stewart*, 368 S.W.3d at 462 (citing *Carter v. Bell*, 279 S.W.3d 560, 568 (Tenn. 2009); *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003); *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003)). Parties proceeding without benefit of counsel are "entitled to fair and equal treatment by the courts," but we "must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

IV. Motion to Strike the State's Response

Although not raised as an issue on appeal by Mr. Willis, we find it necessary at the outset to address the disposition of Mr. Willis's motion to strike the State's response. In its order, the trial court did not address Mr. Willis's motion to strike and did not refer to the State's response. In his "Motion for Reconsideration," Mr. Willis argued, *inter alia*, that if the trial court had allowed a hearing on the petition, he "would have shown" that the Foreperson "would be properly represented" by the county attorney. We note that in

the State's response, the district attorney general did not give notice of representation of the Foreperson and that on appeal, the Foreperson is represented by the county attorney. *See, e.g., Cooley v. May*, No. M2001-01162-COA-R3-CV, 2001 WL 1660830, at \*3 (Tenn. Ct. App. Dec. 28, 2001) (concluding that the district attorney general did not have standing to file a motion to dismiss a state prisoner's petition for writ of mandamus requesting that the county sheriff be required to transfer his sentence credits to the state department of correction and that the sheriff should be properly represented by the county attorney).

In this case, the State did not file a motion to dismiss and appears to have filed a response through the district attorney general as an interested party who, as asserted in the State's response, would have the responsibility if Mr. Willis's petition were granted "to transport [Mr. Willis] and to bear all the associated costs and security this would necessitate." In addition, Mr. Willis, although not naming the district attorney general in his petition in the instant action, did attach to his motion to transport a copy of his petition for writ of mandamus styled as a separate action in the criminal court against the Foreperson and General Crump. He also attached to his petition a copy of the criminal court petition he had served on the district attorney general's office in 2014, and he had previously named General Crump as a respondent to his petition seeking injunctive relief in federal court. Inasmuch as Mr. Willis had clearly notified the district attorney general of his intent to seek the relief requested in this action and inasmuch as he has not raised an issue on appeal regarding the resolution of his motion to strike the State's response, we determine any such issue to be waived. *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review.").

## V. Denial of Petition for Writ of Mandamus

Mr. Willis delineates five issues on appeal, all of which relate to what we determine to be the dispositive issue: whether the trial court abused its discretion by arbitrarily dismissing Mr. Willis's petition for a writ of mandamus. Mr. Willis argues that he has a due process right, pursuant to Tennessee Code Annotated § 40-12-104(a)-(c), to present testimony and other evidence regarding the homicide of Mr. Thomas and the related investigation before the Foreperson and two grand jury members of his choosing. He thereby argues that by dismissing his petition, the trial court violated his constitutional due process rights, as well as his right to access state courts. Mr. Willis further argues that the trial court clerk and master violated rules of civil procedure and Mr. Willis's due process court access rights by declining to issue and serve a summons on the Foreperson with Mr. Willis's petition and that the chancellor violated rules of judicial conduct and Mr. Willis's due process and court access rights by failing to properly supervise the trial court clerk and master in this matter. Upon a thorough review of the record and applicable authorities, we conclude that Mr. Willis has not established a

specific and legal right to present evidence to a grand jury panel and, moreover, that issuing a writ of mandamus to Mr. Willis in this action would manifestly prejudice public interest. We discern no violation of Mr. Willis's due process or court access rights and no abuse of discretion in the trial court's denial of his petition for writ of mandamus.

The issuance of a writ of mandamus is an extraordinary remedy. *State ex rel. Weaver v. Ayers*, 756 S.W.2d 217, 226 (Tenn. 1988). As this Court has previously explained:

> The general rule regarding the issuance of a writ of mandamus is that the writ is not issued to control or coerce discretionary power by a board or officer, but will lie to enforce the performance of an official duty and to compel the exercise of power. *State v. Mayor & Aldermen*, 184 Tenn. 1, 195 S.W.2d 11 (1946); *White's Creek Tpk. Co. v. Marshall*, 61 Tenn. (2 Baxt.) 104 (1872); and *Barnhart v. Neisler*, 25 Tenn. (6 Hum.) 493 (1846). In determining whether an act is a "ministerial act" for which mandamus may lie, courts look to whether the law defines the duties to be performed "with such precision and certainty as to leave nothing to the exercise of judgement." *Lamb v. State*, 207 Tenn. 159, 338 S.W.2d 584, 586 (1960) (quoting C.J.S. Mandamus *sec 63, page 101). Where the duty involves the exercise of discretion or judgement the act is discretionary. *Id.* A discretionary act, which will not support the issuance of a mandamus to compel performance, is defined as one done by an official who has lawful authority to determine whether or not he will perform the act. *Bradley v. State ex rel. Haggard*, 222 Tenn. 535, 438 S.W.2d 738 (1969).

> For an act to be enforced by a writ of mandamus, the act must be purely "ministerial." *Peerless Construction Co. v. Bass*, 158 Tenn. 518, 520, 14 S.W.2d 732 (1929). If the right to have the act performed is doubtful, the right must be first established in some other form of action. Mandamus is a summary remedy, extraordinary in its nature, and to be applied only when a right has been clearly established. *Peerless*, 14 S.W.2d at 733. The writ of mandamus will not lie to control official judgment or discretion, but it is the proper remedy where the proven facts show a clear and specific legal right to be enforced, or a duty which ought to be and can be performed. *State ex rel. Weaver v. Ayers*, 756 S.W.2d 217, 221 (Tenn. 1988), citing *State ex rel. Ragsdale v. Sandefur*, 215 Tenn. 690, 696, 389 S.W.2d 266, 269 (1965).

9

*Hackett v. Smith County*, 807 S.W.2d 695, 698 (Tenn. Ct. App. 1990). Furthermore, a mandamus will not lie where a right is doubtful. *State ex rel. Weaver v. Ayers*, 756 S.W.2d 217, 221 (Tenn. 1988).

Generally, where a public official has any discretion concerning the doing of an act, the issuance of a mandamus is not available. *Davis v. Fentress County Bd. Of Educ.*, 218 Tenn. 280, 402 S.W.2d 873 (1966). Where the exercise of judgment or discretion is required, he may be compelled by the issuance of a mandamus to perform the duty, however his judgment regarding the details in the performance of the duty are to be left unfettered. *Blair v. State ex rel. Watts*, 555 S.W.2d 709 (Tenn. 1977). Where an official has the duty to do an act only after making determinations, evaluations or judgments, a w[r]it of mandamus will not lie to do the act in any particular way. *Seagle-Paddock Pools of Memphis, Inc. v. Benson*, 503 S.W.2d 93 (Tenn. 1973). A court will not substitute its judgment for that of an official vested with discretion unless the official has clearly acted arbitrarily and without regard to his duty in the exercise of that discretion. *See State v. Mayor & Aldermen*, 184 Tenn. 1, 195 S.W.2d 11, 13 (1946).

*Tusant v. City of Memphis*, 56 S.W.3d 10, 18-19 (Tenn. Ct. App. 2001), *perm. app. denied* (Tenn. Feb. 6, 2001).

Regarding due process, our Supreme Court has explained:

Both the United States and Tennessee Constitutions protect the right to due process of law. Section 1 of the Fourteenth Amendment to the United States Constitution provides, "No State shall make or enforce any law which . . . deprive[s] any person of life, liberty, or property, without due process of law . . . ." Article I, section 8 of the Tennessee Constitution states, "[N]o man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers, or the law of the land." We have determined that this provision of the Tennessee Constitution is "synonymous" with the Due Process Clause of the Fourteenth Amendment. *Gallaher* [*v. Elam* ], 104 S.W.3d [455,] 463 [(Tenn. 2003)] (citing *Riggs* [*v. Burson* ], 941 S.W.2d [44,] 51 [(Tenn. 1997)]).

*Hughes v. Tenn. Bd. of Prob. & Parole*, 514 S.W.3d 707, 715 (Tenn. 2017). As to state court access, Article I, Section 17 of the Tennessee Constitution provides:

That all courts shall be open; and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay. Suits may be brought against the State in such manner and in such courts as the Legislature may by law direct.

In his petition for writ of mandamus, Mr. Willis requested that the trial court order the Foreperson to meet with him and allow him to provide evidence related to the murder of Mr. Thomas and investigation of that murder. In his subsequent motion for transport and petition for writ of *habeas corpus ad testificandum*, Mr. Willis requested that he be transported to testify before the grand jury. As a first step in determining whether the remedy of a writ of mandamus is appropriate, we must determine whether the statute at issue "establishes a clear duty to perform a ministerial task" on the part of the Foreperson. *See Tenn. Cmty. Orgs. v. Tenn. Dep't of Fin. & Admin.*, No. M2008-02154-COA-R3-CV, 2009 WL 2393109, at *7 (Tenn. Ct. App. Aug. 3, 2009). In this case, we must therefore determine whether the statute upon which Mr. Willis relies to assert his right, Tennessee Code Annotated § 40-12-104, establishes a clear duty on the part of the Foreperson, the sole respondent named in the petition, to perform the task requested and, if so, whether that task is ministerial in nature.

When interpreting statutes, we adhere to the following longstanding principles:

When dealing with statutory interpretation, well-defined precepts apply. Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.,* 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.,* 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson,* 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.,* 202 S.W.3d 99, 102 (Tenn. 2006). It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources. *Parks v. Tenn. Mun. League Risk Mgmt. Pool,* 974 S.W.2d 677, 679 (Tenn. 1998). Further, the language of a statute cannot be considered in a vacuum, but "should be construed, if practicable, so that its component parts are consistent and reasonable." *Marsh v. Henderson,* 221 Tenn. 42, 424 S.W.2d 193, 196 (1968). Any

interpretation of the statute that "would render one section of the act repugnant to another" should be avoided. *Tenn. Elec. Power Co. v. City of Chattanooga,* 172 Tenn. 505, 114 S.W.2d 441, 444 (1937). We also must presume that the General Assembly was aware of any prior enactments at the time the legislation passed. *Owens v. State,* 908 S.W.2d 923, 926 (Tenn. 1995).

*In re Estate of Tanner,* 295 S.W.3d 610, 613-14 (Tenn. 2009).

The statute at issue, Tennessee Code Annotated § 40-12-104, provides in pertinent part:

(a)     Any person having knowledge or proof of the commission of a public offense triable or indictable in the county <u>may</u> testify before the grand jury.

(b)     The person having knowledge or proof <u>shall</u> appear before the foreman. The person <u>may</u> also submit the sworn affidavits of others whose testimony the person wishes to have considered.

(c)     The person <u>shall</u> designate two (2) grand jurors who <u>shall</u>, with the foreman, comprise a panel to determine whether the knowledge warrants investigation by the grand jury. The panel <u>may</u> consult the district attorney general or the court for guidance in making its determination. The majority decision of the panel <u>shall</u> be final and <u>shall</u> be promptly communicated to the person along with reasons for the action taken.

(Emphasis added.)

The trial court in its order referenced the use of the discretionary auxiliary verb, "may," in subsection -104(a) in determining that the provision did not mandate that the potential witness testify before the grand jury. *See, e.g., Bellamy v. Cracker Barrel Old Country Store, Inc.,* 302 S.W.3d 278, 281 (Tenn. 2009) (explaining that in contrast to the use of "may," "'[w]hen 'shall' is used . . . it is ordinarily construed as being mandatory and not discretionary'" (quoting *Stubbs v. State,* 393 S.W.2d 150, 154 (Tenn. 1965))); *Beacon4, LLC v. I & L Invs., LLC,* 514 S.W.3d 153, 194 (Tenn. Ct. App. 2016), *perm. app. denied* (Tenn. Dec. 15, 2016) ("The provision, however, employs the discretionary auxiliary verb, 'may,' and therefore does not require that a party wishing to mediate an initial decision demand such mediation within thirty days."). In his interpretation of the statute, Mr. Willis instead emphasizes the use of the mandatory auxiliary verb, "shall," in

subsections -104(b) and -104(c), as underlined above, to conflate a portion of subsection -104(a) with -104(b)-(c) and essentially argue that the statute provides in pertinent part:

> Any person having knowledge or proof of the commission of a public offense triable or indictable in the county . . . .

> . . . shall appear before the foreman. . . .

> [and] shall designate two (2) grand jurors who shall, with the foreman, comprise a panel to determine whether the knowledge warrants investigation by the grand jury.

Mr. Willis thereby argues that his appearance before a grand jury panel comprised of the Foreperson and two grand jurors of Mr. Willis's choosing is mandated by Tennessee Code Annotated § 40-12-104(a)-(c). We disagree.

The plain language and organization of Tennessee Code Annotated § 40-12-104 indicate that subsection -104(a) establishes a person's <u>discretionary</u> opportunity to testify, using the discretionary auxiliary verb, "may," before a grand jury panel. Once it has been established that such a person is going to testify, subsections -104(b)-(c) then <u>mandate</u>, using the mandatory auxiliary verb, "shall," much of the manner in which the testimony shall be presented, including the witness's appearance before the Foreperson, the composition of the grand jury panel, and the finality of the grand jury panel's decision regarding whether an investigation is warranted. Mr. Willis has taken out of context the legislature's use of "shall" in describing the manner in which testimony shall be presented in order to assert that a person's testimony before a grand jury panel is mandated if the person claims to have "knowledge or proof of the commission of a public offense triable or indictable in the county." *See* Tenn. Code Ann. § 40-12-104(a). We determine that the unambiguous language of the statute provides that such testimony is discretionary, not mandatory. *See id.*; *In re Estate of Tanner*, 295 S.W.3d 610 at 614 ("When a statute is clear, we apply the plain meaning without complicating the task.").

In support of his argument that his right to appear before a grand jury panel is mandatory, Mr. Willis relies in part on an opinion issued by the Tennessee Attorney General in 1992. Tenn. Op. Atty. Gen. 92-53, 1992 WL 545029 (Sept. 16, 1992). We note that "although opinions of the Attorney General may be persuasive authority, they are not controlling." *Beacon4*, 514 S.W.3d at 173. However, we do afford such opinions "'considerable deference,'" particularly because "'government officials rely upon them for guidance.'" *See id.* (quoting *State v. Black,* 897 S.W.2d 680, 683 (Tenn. 1995)). When questioned regarding whether "potential defendants" could be prohibited from testifying before a grand jury, the attorney general opined that both a "court authorized

13

by law to charge the grand jury" and the district attorney general were "without authority to prohibit potential defendants from appearing and giving evidence before the grand jury." Tenn. Op. Atty. Gen. 92-53, 1992 WL 545029, at *1. The attorney general explained in relevant part:

> Rule 6(j), Tenn. R. Crim. P., which grants without limitation power to the grand jury to send for witnesses, to issue process, and to punish for failure to appear, and Tenn. Code Ann. § 40-12-104, which <u>allows</u> any person having knowledge or proof of the commission of a public offense triable or indictable in his county to testify before the grand jury upon proper application, appear to be entirely consistent with the case law. No rule or statute either expressly or impliedly allows a court to <u>preclude</u> persons from testifying before a grand jury.

*Id.* (emphasis added). Setting aside the question of whether Mr. Willis is a "potential defendant," which is not at issue here, Mr. Willis again obfuscates mandatory language (the court is without authority to <u>prohibit</u> individuals from testifying) with discretionary language (the statute <u>allows</u> testimony). *See id.*

Mr. Willis also relies on a decision rendered by our Supreme Court that is cited in the 1992 attorney general's opinion, *Watts v. Civil Serv. Bd. for Columbia*, 606 S.W.2d 274 (Tenn. 1980). In *Watts*, a police officer was suspended from duty when he disregarded a written directive from the chief of police denying the officer's request to testify before a grand jury concerning a case that had been previously dismissed in court due to a technical error. *Id.* at 279-80. Upon appeal to the applicable civil service board, circuit court, this Court, and the Tennessee Supreme Court, the officer's suspension was upheld at each level. *Id.* at 276. The High Court explained:

> We agree with the statement that no one may prevent a person from appearing before a grand jury. Indeed, it is his duty to do so if he has evidence of a crime. The District Attorney may ask for an indictment, or the grand jury may act by presentment.

> However, we are of the opinion that there is material and substantial evidence that the act of the plaintiff's appearance before the grand jury is not the reason that the plaintiff was suspended indefinitely. We think that there is material, substantial and convincing evidence that the real issue was whether the plaintiff was subject to obedience to orders of his superiors. What was demanded of the plaintiff was that he handle his investigation in accordance with official channels, police policies and procedures and in cooperation with the Detective Division.

14

*Id.* at 282-83. In referencing the language that "no one may prevent a person from appearing before a grand jury" and that it is the person's "duty to do so if he has evidence of a crime," the attorney general acknowledged that the language constituted dicta in the context of *Watts*. Tenn. Atty. Gen. Op., 1992 WL 545029, at *1 (quoting *Watts*, 606 S.W.2d at 282-83). More importantly, the language is again mandatory in terms of the lack of authority to <u>prevent</u> testimony but discretionary in terms of the potential defendant's or witness's opportunity and civic duty to testify. Mr. Willis's reliance on *Watts* and on the attorney general's 1992 opinion in support of his alleged mandatory right to testify before a grand jury panel is unavailing.

Furthermore, nothing in the statute mandates that the Foreperson must travel to meet with an incarcerated individual who claims to have knowledge or proof of a crime or that the Foreperson must cause an incarcerated individual to be transported to appear before the grand jury. A writ of mandamus is inappropriate in this case, first and foremost, because Tennessee Code Annotated § 40-12-104 does not establish a clear and specific duty on the part of the Foreperson to perform the task requested by Mr. Willis, specifically to meet with Mr. Willis in prison or to cause Mr. Willis to be transported to testify before a grand jury panel.

In addition, much of the manner in which the Foreperson, in collaboration with the grand jury panel, is to determine whether the potential witness's knowledge warrants investigation by the grand jury is discretionary. *See* Tenn. Code Ann. § 40-12-104(b)-(c). We note that Tennessee Rule of Criminal Procedure 6(j)(1) provides that "[t]he grand jury shall send for witnesses whenever <u>the grand jury or any member suspects</u> that an indictable offense has been committed" (emphasis added). Thus, the grand jury has the authority to send for witnesses upon its own volition but is not required to transport an inmate who claims to have information regarding a crime. *See* Tenn. R. Crim. P. 6(j)(1). We do not find the task requested by Mr. Willis to be purely ministerial in nature. *See Grant*, 2010 WL 844912, at *5 ("Mandamus is a summary remedy, extraordinary in its nature, and to be applied only when a right has been clearly established, so that there remains only a positive ministerial duty to be performed, and it will not lie when the necessity or propriety of acting is a matter of discretion." (quoting *Peerless Constr. Co. v. Bass*, 14 S.W.2d 732, 733 (Tenn. 1932))). Moreover, we find no indication in the record that the Foreperson acted arbitrarily or without regard to her duty such that the trial court would have been warranted in substituting the court's judgment for that of the Foreperson by issuing a writ of mandamus. *See Tusant*, 56 S.W.3d at 18-19 ("A court will not substitute its judgment for that of an official vested with discretion unless the official has clearly acted arbitrarily and without regard to his duty in the exercise of that discretion.").

Finally, even if Mr. Willis could assert a clear and specific right to testify and present evidence before a grand jury panel, a writ of mandamus would not be a proper remedy if granting the writ would manifestly prejudice public interest. *See Grant*, 2010 WL 844912, at *5 ("Where the court can see, upon a review of the whole case, that public interests will be prejudiced and hindered, the writ will be denied."). In *Grant*, a state inmate filed a petition for a writ of mandamus, seeking to have the trial court compel the county grand jury foreperson "to inquire into his allegations" against a law enforcement officer investigating the crime that led to the petitioner's arrest and conviction. *Id.* at *3. In affirming the trial court's denial of the petition, this Court first determined that the petitioner had failed to establish a "specific and legal right" to the writ of mandamus. *Id.* at *5. This Court explained:

> At this time, [the petitioner's] specific and legal right cannot be established. A writ of mandamus is not warranted on this record. However, even if [the petitioner] could assert a clear and specific right to submit evidence to a grand jury panel, the trial court below properly denied issuing a writ of mandamus because it would manifestly prejudice public interest. As noted by the State in its brief, no doubt every defendant serving a sentence because of a conviction or plea has deep resentment toward the law enforcement officers who investigated their crimes. To require grand jury forepersons to convene panels and transport convicted defendants to raise any meritless allegations they please against law enforcement personnel would expend scarce resources and would establish a costly precedent clearly prejudicial to the public interest.

*Id.*

In response to the Foreperson's partial reliance on *Grant*, Mr. Willis argues that the facts of this action are distinguishable because he seeks to present testimony and other evidence concerning a crime and investigation other than the crimes for which he has been convicted. We determine this to be a distinction without a legal difference. As explained above, Mr. Willis has failed to establish a specific and legal right to the relief he requests. Moreover, upon our thorough review of the record and applicable authorities, we determine that issuing a writ of mandamus in this case to an individual with what the federal district court has described as the "unique circumstances" of being a "convicted double murderer, imprisoned on death row in a state correctional facility, who desires to give evidence, even perhaps to testify, before a grand jury investigating another murder," *see Willis v. Crump*, 2015 WL 8781215, at *4, would manifestly prejudice public interest.

16

Throughout his pleadings before the trial court and his briefs on appeal, Mr. Willis describes alleged facts that cross over from the murder of Mr. Thomas to the murders for which Mr. Willis was convicted and to the law enforcement investigation of the crimes for which Mr. Willis was convicted. For instance, in his July 2016 letter to the state attorney general, Mr. Willis stated that he "discovered the same people responsible for the murders [he] stand[s] convicted and sentenced to death for [a]re also responsible for the unsolved murder of Mr. Samuel Johnson Thomas." One need only review the "Requested Relief" in the conclusion of Mr. Willis's principal brief on appeal to note this cross-over from Mr. Thomas's murder into Mr. Willis's convictions. Mr. Willis requests, *inter alia*, that this Court make "a finding of facts that the State is holding Mr. Willis on pretext of a conviction" and that "Mr. Willis is being held illegally."[2]

We agree with the trial court and the Foreperson that to the extent that Mr. Willis seeks to collaterally attack his own criminal convictions, allowing him to do so would be manifestly against public interest. We also find this Court's conclusion in *Grant* to be applicable in that to the extent that Mr. Willis seeks to assert allegations against the law enforcement personnel who investigated the crimes for which he was convicted, allowing him to do so would "expend scarce resources and would establish a costly precedent clearly prejudicial to the public interest." *See Grant*, 2010 WL 844912, at *5.

Upon careful review, we determine that the trial court did not abuse its discretion by denying Mr. Willis's petition for writ of mandamus because Mr. Willis does not have a clear and specific right to the remedy he seeks, nothing in the record indicates that the Foreperson acted arbitrarily in the performance of her duty, and issuance of the writ would manifestly prejudice public interest. We further determine, therefore, that the trial court did not violate Mr. Willis's constitutional rights to due process and state court access.

---

[2] On appeal, Mr. Willis has attached to his principal brief two volumes of appendices, containing multiple documents that were not presented to the trial court as part of this action and many documents that appear to be from the proceedings leading to Mr. Willis's criminal convictions. Mr. Willis requests that this Court take judicial notice of "facts contained in" these documents pursuant to Tennessee Rule of Evidence 201. Inasmuch as the documents attached by Mr. Willis do not constitute the kinds of facts for which this Court will take judicial notice, we decline to do so and determine that Mr. Willis's appendices cannot be considered on appeal. *See* Tenn. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute, in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."); Tenn. R. App. P. 13(c) (providing that state appellate courts "may consider those facts established by the evidence in the trial court and set forth in the record and any additional facts that may be judicially noticed or are considered pursuant to Rule 14 [regarding post-judgment facts]."). To the extent that Mr. Willis has requested that this Court take mandatory judicial notice of law, pursuant to Tennessee Rule of Evidence 202(a), we note that such a request is unnecessary because this Court considers all applicable law.

## V.  Remaining Issues

Mr. Willis has raised additional issues regarding (1) the trial court clerk and master's alleged violations of rules of civil procedure and Mr. Willis's constitutional rights, (2) the chancellor's alleged violations of rules of judicial conduct and Mr. Willis's constitutional rights in the court's supervisory role over the clerk and master, and (3) the Foreperson's and district attorney general's alleged "actions of concealment" concerning the investigation into Mr. Thomas's murder and alleged violation of Mr. Willis's constitutional rights in their opposition to Mr. Willis's requested grand jury testimony.  In addition, the Foreperson has raised an issue regarding whether Mr. Willis's petition for a writ of mandamus is barred by principles of *res judicata* and collateral estoppel in consideration of the federal district court's denial of injunctive relief in *Willis v. Crump*, 2015 WL 8781215, and the statements made by Mr. Willis in this case that appear to collaterally attack his criminal convictions.[3]  Having determined that Mr. Willis was unable to establish a specific and legal right to the writ of mandamus he requested and that his constitutional rights were not violated by the trial court's denial of the writ, we conclude that these determinations are dispositive.  The remaining issues raised on appeal are therefore pretermitted as moot.

## VI.  Conclusion

For the foregoing reasons, we affirm the trial court's judgment denying Mr. Willis's petition for a writ of mandamus.  This case is remanded to the trial court, pursuant to applicable law, for collection of costs assessed below.  The costs on appeal are assessed against the appellant, Howard Hawk Willis.

_____
THOMAS R. FRIERSON, II, JUDGE

---

[3] "The doctrine of res judicata or claim preclusion bars a second suit between the same parties or their privies on the same claim with respect to all issues which were, or could have been, litigated in the former suit." *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012).  "Collateral estoppel is an issue-preclusion doctrine developed by the courts" that "bar[s] 'the same parties or their privies from relitigating in a later proceeding legal or factual issues that were actually raised and necessarily determined in an earlier proceeding.'" *Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102, 107 (Tenn. 2016) (quoting *Mullins v. State*, 294 S.W.3d 529, 534 (Tenn. 2009)) (additional internal citations omitted).